AUTOGRAPHIC REGISTER CO. v. A. I. NAMM & SONS, Inc.

No. 5159.

District Court, E. D. New York.

Dec. 17, 1931.

Cooper, Kerr & Dunham, of New York City (John C. Kerr and Thomas J. Byrne, both of New York City, of counsel), for plaintiff.

Duell, Dunn & Anderson, of New York City (Charles Neave, Holland Duell, and J. E. Daniels, all of New York City, of counsel), for defendant.

MOSCOWITZ, District Judge.

This is a suit in equity for the alleged infringement of United States patent No. 1,-396,070, granted on November 8, 1921, to plaintiff as assignee of the inventors, Walter C. Shoup and Walter E. Oliver, for paper feed device for autographic registers. The title of the plaintiff in the letters patent was conceded.

The Namm corporation is the nominal defendant, as the defense of this action was undertaken and conducted by the American Sales Book Company, Limited, a corporation of the Province of Ontario, Canada, which has manufactured for it and sells autographic registers, being the alleged infringing devices Exhibits 3 and 4 which were sold by the defendant within this district.

Claims 4, 5, 6, 29, 30, 31, 32, 33, 47, 48, 53, and 54, which were relied upon by the plaintiff, are as follows:

"Claim 4. In a device adapted to regulate the feeding of a plurality of superposed strips of fabric through the medium of an aperture in each thereof, means for advancing said strips comprising means which, upon engaging said apertures, render said advancing means inoperative to continue said advancement."

"Claim 5. In a device adapted to regulate the feeding of a plurality of superposed strips of fabric through the medium of a series of apertures arranged longitudinally of each thereof, means for advancing said strips comprising means which, upon successively engaging said apertures, render said advancing means intermittently inoperative to continue said advancement."

"Claim 6. In a device adapted to regulate the feeding of a plurality of superposed strips of fabric through the medium of apertures arranged in series both longitudinally and transversely thereof, means for advancing said strips comprising means which, upon successively engaging the series of transversely-arranged apertures, render said advancing means intermittently inoperative to continue said advancement."

"Claim 29. An autographic register adapted for use with record strips containing a series of similar forms between each two of which a hole is provided, and comprising a frame, a roller journaled in the forward end of said frame, an annulus on said roller, and a rotating object against which said annulus presses a strip for movement thereby until said annulus enters one of the holes in said strip."

"Claim 30. An autographic register adapted for use with record strips containing a series of similar forms between each two of which a hole is provided in each strip of forms, and comprising a frame, a pair of rollers journaled in the forward end of said frame, to receive said strips, an annulus on one roller to press a strip against the other roller for movement thereby until said annulus enters one of the holes in said strip, and means to advance all of said strips after the corresponding holes therein reach said annulus."

"Claim 31. A device of the character described adapted for use with webs having a series of spaced feeding sections thereon, comprising, in combination, a support for webs, means for feeding a plurality of webs over said support, comprising means for engaging said webs at one of said feeding sections and feeding each of said webs a distance equal to the length of said feeding section of said webs, said means being adapted to pass out of engagement with said webs at the end of the feeding section, whereby the feeding of the webs is stopped, and means for engaging the webs for starting the feeding of said webs when said feeding means is not in engagement with the feeding section of the webs."

"Claim 32. A device of the character described adapted for use with webs having longitudinally spaced perforations, comprising, in combination, a support for a plu-

rality of webs, means for feeding said webs over said support comprising means adapted to engage said webs in longitudinal aline-ment with said perforations, said means being of a width less than the width of the perforations, and auxiliary means adapted to engage said webs out of alinement with the perforations."

"Claim 33. A device of the character described adapted for use with webs having longitudinally spaced perforations, comprising, in combination, a support for webs, rotary means for engaging said webs in line with said perforations on a line of contact narrower than the width of the perforations, comprising rotating members acting on both faces of the webs, and means for engaging said webs out of alinement with the perforations to start the feeding of the same."

"Claim 47. In mechanism for regulating the feeding of a strip of fabric through the medium of an aperture therein, the combination, with means for advancing said strip, which, upon engaging said aperture, become inoperative to continue such advancement, and means adapted for either mechanical or manual actuation of said advancing means, of means manually made effective for rendering said advancing means again operative for strip advancement."

"Claim 48. In mechanism for regulating the feeding of a strip of fabric through the medium of a series of apertures arranged longitudinally thereof, the combination, with means for advancing said strip, which, upon engaging any one of said apertures, becomes ineffective to continue such advancement, of means for rendering said advancing means again effective for strip advancement, the period of intermission between successive advancements of said strip being variable at the will of the operator."

"Claim 53. In mechanism for regulating the feeding of a strip of fabric having a series of perforations arranged longitudinally thereof, the combination, with a feed roller, and means for actuating said roller, of a rotatable member adapted for frictional engagement with said strip, and cooperative with said roller for strip advancement, said member, upon successively engaging said perforations, becoming non-effective to cooperate with said roller for strip advancement, and means rendered effective manually for bringing said member into frictional engagement with an unperforated portion of said strip, and thus rendering said member again effective to cooperate with said feed roller for strip advancement, whereby the period of intermission between each of the successive strip advancements is subject to manual control, either through the medium of said means for actuating said feed roller, or through the medium of said means for bringing said cooperating member into engagement with an unperforated portion of said strip."

"Claim 54. In combination, a strip of fabric provided with a series of apertures arranged longitudinally thereof; rotatable means comprising a roller and a disk, by which the strip is advanced and which becomes ineffective to advance the strip when an aperture is over the disk; and means, actuated by an operator, to co-act with the feed roller to move the strip so that the aperture is no longer above the disk, whereby the feed roller and disk may again advance the strip."

The plaintiff contends that the claims mentioned were infringed by the defendant by selling the alleged infringing devices which were furnished by the American Sales Book Company, Limited.

The following patents were introduced by the defendant to illustrate the prior state of the art: Casler patent, No. 776,723; Cook patent, No. 486,768; Pfeifer patent, No. 496,894; Krauth reissue patent, No. 14,189; Jennings, Jr., patent, No. 1,235,805; Swift, Jr., patent, No. 963,828; Crowell patent, No. 624,308; Bilgram patent, No. 734,215; Keyes patent, No. 765,316; Schirmer patent, No. 1,106,976; and Schulman patent, No. 1,-317,226.

The defendant has offered as defenses that the alleged infringing devices were made and sold under a license granted by the plaintiff to the American Sales Book Company, Limited, under the patent in suit, and that the plaintiff is guilty of laches. The defendant denies infringement of the claims of the patent in suit, except it admits the infringement of claims 31 and 33 in the absence of a license.

On an application dated October 19, 1916, the patent was granted on November 8, 1921. An interference was declared between this patent and an application of Louis F. Hagemann, filed July 17, 1917, for improvements in autographic registers. The Hagemann application was owned by the American Sales Book Company, Limited.

The Patent Office, after submission of proofs of Shoup and Oliver, allowed all of the claims relied upon by the plaintiff in this action. The claims in the patent cover broadly autographic registers in which the feed of

the strips of paper is effected by a feed roll or rolls, one or more of which is so arranged as to enter apertures in the strips of paper, thereby becoming temporarily inoperative to feed the strips.

Hagemann, having lost the broad claims in the interference, prosecuted his application with respect to the specific subject-matter of his invention, and thereafter patent No. 1,-456,773 was granted to the American Sales Book Company, Limited, assignee of Hagemann. Hagemann's invention consists of means for separating the feed rolls from the pressure rolls, thus releasing the paper strips from the grip of the rolls. The only means disclosed for such separation are pins 39 on the feed rolls, and such pins are required by each and all of the claims.

The American Sales Book Company, Limited, as a result of the interference, was unable to employ the Hagemann invention without infringing upon the claims of the patent in suit.

On April 18, 1918, plaintiff granted a license to the American Sales Book Company, Limited, which is still in effect, to make and sell registers involving plaintiff's invention, provided they also embodied the Hagemann invention. Under the terms of the license agreement the American Sales Book Company, Limited, did not receive an exclusive license to use the invention. The license contained the following provision: "First: The First Party hereby exclusively licenses and empowers the Second Party to manufacture, use and sell to others to use within the United States autographic registers and other paper feeding devices of the specific type disclosed in the said application of Louis F. Hagemann, and modifications thereof which do not depart from the general design illustrated in the drawings of said application and disclosed in the specification, it being understood that, subject to the foregoing limitations, the Second Party is licensed hereby to manufacture, use and sell to others autographic registers and other devices in which the feed of the strip or strips, such as are intended for use with the type of autographic register referred to herein, is affected by a feed roll or rolls, one or more of which are so designed or arranged as to enter apertures in said strip or strips, and thereby release the feed grip of the roll or rolls on the strip or strips."

In this license agreement, the licensee acquired the right to use the broad invention only in conjunction with Hagemann's specific type of device. Under the license agreement plaintiff had the right to use the invention, but obtained no right to use Hagemann's invention.

Pursuant to the terms of the license agreement, plaintiff is entitled to operate under the invention of the Shoup and Oliver patent. It is excluded from employing the specific type disclosed in the Hagemann application. The American Sales Book Company, Limited, is licensed to use and manufacture and sell to others to use within the United States autographic registers and other paper feeding devices of the specific type disclosed in the said application of Louis F. Hagemann, and modifications thereof which do not depart from the general design illustrated in the drawings of said application and disclosed in the specification.

The Hagemann patent shows the use of rolls of paper which may travel upon inclined tracks. The strips of paper from the respective rolls are threaded over guide rolls and over a platen to the feed mechanism which consists of a pressure roller and disks. When the paper strips are fed through the feed mechanism, the pins enter the apertures therein and contact with the pressure roller, forcing it upwards. The paper is then no longer frictionally held, and by reason of the inclined tracks upon which the rolls of paper travel the paper will be drawn back, given retrograde motion, until the ends of the holes come in contact with the pins on the disks. Upon rotating the handle member the pins on the disks will help feed the paper forward and supplementary thereto shoes are provided at the sides of the disks overlapping the margins of the holes. When the pressure roller lowers by reason of the pins passing out from under it, the shoes grip the paper and pull it forwardly until such time as the apertures in the paper pass beyond the bight of the disk and pressure roller. During this time the pins are being withdrawn from the apertures. This specific type of autographic register is the only type of register which the American Sales Book Company, Limited, was privileged to make and sell under the patent in suit.

Pursuant to the provisions of the license agreement, the American Sales Book Company, Limited, was restricted to manufacture and sell a device which embodied therein the roller separation and pin alignment and retrograde moving strips wound on rolls disclosed in the Hagemann application. The American Sales Book Company, Limited, was to use the invention of the Shoup and Oliver patent solely in conjunction with the roller

separation, pin alignment, and retrograde moving paper in rolls of Hagemann.

The purpose of the invention is shown in the specification, as follows:

"This invention relates, in general, to devices for mechanically regulating the feeding of one or more sheets or strips of paper or other fabric, and has specific reference to mechanism by means of which the feeding of a plurality of superposed sheets or strips may be so regulated as to insure substantially perfect registration of certain parts thereof at a predetermined point in the advancement of said sheets or strips.

"We have selected an autographic register with which to illustrate the commercial application of our improved paper-feeding device, particularly on account of the fact that such registers have for many years been in common use, that it is customary to employ with them a plurality of superposed strips of paper, and that, since matter written or printed at certain points on forms initially inscribed upon the uppermost strip is intended to be reproduced autographically at corresponding points on similar forms initially inscribed upon the other strips, it is extremely important that the superposed forms shall be in exact registration at the time of the writing or printing operation. However, it is manifest that, while the use of our present invention with autographic registers may be regarded as being typical, it also has numerous other applications, as, for example, with typewriters, cash registers, vending machines and printing presses.

"In some types of the various devices in which strips of fabric are required to be fed intermittently, their end portions are advanced, and the distance of advancement controlled, by direct manual pull, this method of operation sometimes being assisted by the use of some form of detent intended to enter a hole in the strip, and thereby to regulate the distance of each successive advancement. In other types, some form of feeding mechanism is employed, such as a reciprocating carriage, feed rollers, or spindles adapted to engage marginal perforations in the strips. There are, however, numerous objections to the various feeding methods known heretofore, and among these objections may be mentioned the loss of time and the attention required for manual advancement; the expense, cumbersomeness and at least partial impracticability of the so-called "measured throw" mechanisms devised up to the present time; the fact that it is practically impossible to secure uniform advancement of more than two superposed strips by the use of feed rollers, and the palpable objections to marginal perforations in the strips.

"Another point in connection with the foregoing objections, and it is one of very great importance, especially to users of manifolding devices, is that, owing partly to the greater or less amount of lost motion that is usual in printing presses, partly to the very considerable variations to be found in all commercial papers such as are used for manifolding work, and partly to the differences in the shrinkage of such papers after having been printed upon, and the variable effects of changes in the temperatures and atmospheric conditions under which the forms are printed and the paper shipped, stored and used, it has not been found commercially feasible to insure exactly uniform spacing and alinement of a series of printed forms, so that, even if a plurality of superposed strips be advanced with absolute uniformity, it is found that their forms do not remain in exact registration.

"Still another important consideration in this connection has to do with the desirability of alining the forms on the superposed strips transversely, as well as longitudinally. In many cases the necessity of securing sidewise alinement of secondary inscriptions on strips of fabric which have primary inscriptions thereon is nearly, if not quite, as great as that of providing for alinement longitudinally of said strips, and it is believed that no mechanism has been devised heretofore which is adapted to meet these two requirements satisfactorily. With the mechanical advancing means employed up to the present time, the use of any form of side guides has little if any effect in maintaining a strip of fabric in such position that its longitudinal center line will at all times be over a given point, and it is customary to correct for the variations in sidewise alinement by releasing the strips from the advancing mechanism and readjusting their positions manually. This is manifestly undesirable, yet conditions such as those referred to hereinbefore as rendering it difficult, if not impossible, to fix exactly the positions of either primary or secondary inscriptions longitudinally of a strip of fabric also interfere with the regulation of their transverse positions.

"The principal object of the invention disclosed herein is to provide mechanism adapted to feed a strip of fabric, or a plurality of superposed strips, uniformly, and, when feeding superposed strips, to insure substantially exact registration of predeter-

mined portions thereof at a given point in the feeding operation, while correcting automatically for variations in the locations of said portions either longitudinally or transversely of said strips. Other objects are the provision of such feeding mechanism which shall be simple, inexpensive, unlikely to get out of order, have few wearing parts and be readily accessible for repairs and replacements, and which requires a minimum of manual attendance."

The patent in suit is for a paper feed device for autographic registers. It is described very well by plaintiff's witness Johnson. He testified that prior to the invention in suit means employed for feeding a plurality of strips of paper consisted of a friction roller and a pressure roller like a clothes wringer, which clutched the paper between them and carried it forward until the crank came to a stop and limited the amount of paper withdrawal. There was considerable trouble with this arrangement because as the strips advanced one would get ahead of the others causing difficulty in the handling of the machine.

Johnson further testified:

"The difficulty with that, which was known as a friction roll manifold, was this: that as these strips were advanced, these long strips were advanced, the inside strip of the pile of three would gradually get ahead of the others, due to the effective increased diameter of the lower roller or the upper roller, for that matter. The thickness of the paper on that roller really increased its diameter, so that for each revolution the middle strip was fed a little further than the other. And then in the friction roll manifold we had the difficulty of slippage. One strip might, for some reason or other, which would cause it to encounter a little resistance, be dragged behind, and that caused a great deal of trouble.

"Another very important difficulty in connection with the prior machines was that the printing on the forms was printed, and they usually like to have them printed so that all the copies would be the same. When they were printed the lines and spaces imprinted on the various strips might be different and the dividing spaces, due to changes in climatic conditions during the printing operation. If you print a piece of paper on one day you will find that these forms when you let them out in a big string, a big string of them, you will find that they might measure 6 feet, and then if you print those same things on a different day it might be shorter or longer than 6 feet, according to the conditions.

"With the machine of this invention the feed is regulated by a series of apertures in each form. Those apertures are placed in a definite relation to the printing mechanism * * * ."

In the patent in suit apertures are placed in a definite relation to the printing on the strips, and these apertures therefore prevent the slipping of the paper and hold the paper in a definite place. Furthermore, in the use of the feed mechanism if the apertures in the respective sheets are not in position when the machine is started the feed mechanism will automatically correct this, and when the strips are fed forward the disks 37 will enter the apertures. The apertures in any of the strips going over the disks 37 will not feed beyond that point. The other strips will continue to feed until they reach the bight of the disk and the pressure roller. When the apertures in the respective strips reach the bight of the pressure roller and disk, further forward movement of the strip is arrested.

Plaintiff's invention is being used in many lines of business and is adapted to any kind of business in which multiple copies of papers are required. The plaintiff's autographic registers embodying the invention of the patent in suit have had a large commercial success. In addition to manufacturing and selling these registers, plaintiff has granted licenses to others.

No prior art is set up in defendant's answer. The defendant, however, was permitted to offer in evidence the following patents solely for the purpose of showing the state of the art. None of these patents anticipate the patent in suit.

Casler Patent, No. 776,723.

There is no proof that the Casler patent has ever been used commercially. This patent is for a feed device for a motion picture film. Moving picture machines and autographic registers are not in the same art. Casler did not teach that a plurality of paper strips could be fed in unison and at the same time prevent accumulated slippage as present in friction fed devices when operating upon a plurality of strips. While Casler may have been of some value to the moving picture art, there is considerable doubt about that in view of the fact that Casler's patent was never used commercially. In any event, Casler did not aid the manifolding art. Casler's patent

deals with a single strip of film being considerably thicker than the paper strips used in autographic registers. In the case of autographic registers several sheets of paper are used.

### Cook Patent, No. 486,768.

Cook described his invention as follows: "My invention relates to that class of autographic registers in which a check-strip and a record-strip are led over a writing-tablet, where the desired memoranda is written upon the check-strip and duplicated upon the record-strip by means of an interposed transfer medium, and whence the check-strip is led out of the machine and severed to form a detached check and the record-strip led back into the machine and stored in suitable form as a record. The object of my invention is to simplify the construction and increase the efficiency of the operation of this class of machines." Cook does not have apertured strips. The strips could get out of alignment.

### Pfeifer Patent, No. 496,894.

This patent is a recording type manifolding machine. Strips of paper from the rolls K, L, and M are led over the plated N and are fed by frictional engagement between a pressure roller O and a feed roller P driven by a crank D. It has no feeding means which could enter apertures if the strips were apertured.

### Krauth Patent, No. 14,189.

Krauth described his invention as follows: "My invention relates to manifolding machines or autographic registers, in which a plural number of webs of paper in superposed arrangement for manifolding, usually containing preprinted forms, as bills of lading, sales slips, and the like, are fed and exposed over a writing table and within a margin frame area and withdrawn from the machine in their form lengths to be severed from the web across a tearing blade." This patent does show superposed apertured strips, but these are hand-fed or pulled out and there is no feeding means to enter the apertures and thereby render the advancement intermittent.

### Jennings Patent, No. 1,235,805.

This patent relates to a printing press operating on a single web of paper and has an intermittent feed with a take-up device. There is no provision for the feeding means to enter apertures in the strip to render the feeding means inoperative to continue the advancement; the strip is not perforated.

### Swift, Jr., Patent, No. 963,828.

This is described by the inventor as follows: "My improvement relates to mechanism arranged to effect the intermittent progressive movement of a web of paper or other flexible fabric which it is desired to intermittently print, perforate, notch, or otherwise modify at successive equal intervals of its length; said intervals being determined by the extent of each progressive movement of the web, with respect to the modifying means." The device described operates on a single strip, which contains no apertures.

### Crowell Patent, No. 624,308.

Crowell described his invention, as follows: "The main object of the present invention is to provide an improved feeding mechanism for feeding a web forward in proper time to secure the uniform timing and positioning of sheet lengths thereof, and more particularly to secure the proper timing of the feed of the web with relation to cutting devices by which the web is divided into sheets or to other mechanisms." This patent is for a feeding and pasting mechanism. It does not have a device to regulate the feeding of a plurality of superposed strips of fabric.

### Bilgrim Patent No. 734,215.

Bilgrim described his invention, as follows: "My invention consists in a method for feeding a continuous band of paper or other material through two machines or twice through the same machine, so that the operations performed each time shall correctly register with one another. This is accomplished, first, by providing the band of paper with a series of cuts, holes, or indentations capable of forming obstructions; second, by providing a periodical feeding device to feed slightly more than required, and, third, by temporarily releasing the feeding mechanism and withdrawing the excess previously fed, permitting the said obstruction to limit the amount so withdrawn." This patent does not describe an autographic register. It does not contain a plurality of strips and has no apertures in the strips.

### Keyes Patent, No. 765,316.

Keyes described his invention as follows: "This invention relates to paper-feeders, and relates especially to apparatus for feeding paper from a continuous strip or roll and for accurately severing this strip into sheets." This patent shows a paper feeding device for printing presses. There is no disclosure of feeding of a plurality of strips.

Schirmer Patent, No. 1,106,976.

Schirmer described his invention as follows: "This invention relates to new and useful improvements in autographic registers. The object of the invention is to provide certain improvements relating to the feeding mechanism for the paper strips upon which the usual notations, entries, etc., are made; to provide certain improved rewinding mechanism for the record strip, and to otherwise improve the mechanism." This patent shows an autographic register having pinwheels 17 by means of which strips 8 and 9 having rows of pinwheel perforations 15 may be advanced to be issued from the machine. In addition to this, another strip 7 is guided out of contact with the pinwheels and passes between the feed rolls 25–35 to be wound on a spool 27 and retained in the machine. The feeding speed of the strip 7 may be different from that of the strips 8 and 9. The apertures in the strip do not render the advancement intermittent. It simultaneously advances strips of different lengths, but those which issue from the machine are all of the same length while the one which is advanced a different length is retained in the machine.

Schulman Patent, No. 1,317,226.

This patent was in the interference which involved plaintiff's patent and priority was awarded to the patent in suit.

The infringing devices Exhibits 3 and 4 are made according to and embody the invention of the Shoup and Oliver patent in suit. Neither of these devices embodies the features characterizing the specific type of the Hagemann patent.

On a motion for an order permitting the trial of the issue of license, separate and apart from the trial of the other issues, the defendant's counsel submitted a brief to the court containing the following language: "In order that there may be no doubt as to this, the defendant is willing to concede that the device referred to as the 'Wiz' register, involved in this suit, would, in the absence of a license, infringe claims of the patent in suit."

At the trial defendant's counsel denied infringement, except he admitted that in the absence of a license claims 31 and 33 would be infringed.

Claim 4 contemplates feeding a plurality of superposed strips with a feeding means so arranged that upon successively engaging apertures in the strips the advancing means is rendered inoperative. When the disks enter the apertures in the paper strip, further advancement of the strips may not be had without the employment of other means.

In claim 5 the feed mechanism becomes intermittently inoperative to advance the strips.

In claim 6 the disks engage successively with transversely arranged apertures in the strips.

Claim 29 defines a roller journaled in the forward end of the frame; an annulus on the roller and a rotating object against which the annulus presses the strip for movement thereby until the annulus enters one of the holes.

Claim 30 recites a combination which includes a frame, a pair of rollers journaled in the forward end of the said frame to receive said strips, an annulus on one roller to press a strip against the other roller for movement thereby until said annulus enters one of the holes in said strip, and means to advance all of said strips after the corresponding holes therein meet said annulus.

The defendant concedes that in the absence of the license, claims 31 and 33 would be infringed.

Claim 32 provides for use with webs having longitudinally spaced perforations, a support for a plurality of webs, means for feeding said webs over said support comprising means adapted to engage said webs in longitudinal alignment with said perforations, said means being of a width less than the width of the perforations, and auxiliary means adapted to engage said webs out of alignment with the perforations.

Claim 47 recites a combination including means for advancing said strips, which, upon engaging said apertures, become inoperative to continue such advancement, and means adapted for either mechanical or manual actuation of said advancing means, and means manually made effective for rendering said advancing means again operative for strip advancement.

The combination in claim 48 includes means for advancing a strip, which, upon engaging in one of said apertures, becomes ineffective to continue such advancement, means for rendering said advancing means again effective for strip advancement; the period of intermission between successive advancements of said strip being variable at the will of the operator.

Claim 53 recites a combination which includes a feed roller, and means for actuating said roller, of a rotatable member adapted for frictional engagement with said strip, and co-operative with said roller for strip ad-

vancement, said member, upon successively engaging said perforations, becoming ineffective to co-operate with said roller for strip advancement, and means rendered effective manually for bringing said member into frictional engagement with an unperforated portion of said strip, and thus render said member again effective to co-operate with said feed roller for strip advancement whereby the period of intermission between each of the successive strip advancements is subject to manual control, either through the medium of said means for actuating said feed roller, or through the medium of said means for bringing said co-operating member into engagement with an unperforated portion of said strip.

Claim 54 recites a combination which includes a strip of fabric provided with a series of apertures arranged longitudinally thereto, rotatable means comprising a roller and a disk, by which the strip is advanced and which becomes ineffective to advance the strip when an aperture is over the disk; and means actuated by an operator to coact with the feed roller to move the strip of paper so that the aperture is no longer above the disk, whereby the feed roller and disk may again advance the strip.

Claims 29, 30, 31, 32, and 33 were involved in interference in the Patent Office with the application of Hagemann referred to in the license, and all of them were awarded to Shoup and Oliver.

All of the claims Nos. 4, 5, 6, 29, 30, 31, 32, 33, 47, 48, 53, and 54 read upon the defendant's devices Exhibits 3 and 4.

Notice of infringement of the patent in suit was sent to the Pacific Manifolding Book Company on April 1, 1924. The American Sales Book Company, Limited, and Pacific Manifolding Book Company have been since 1928 owned by Moore Corporation, a Canadian corporation. Mr. Moore has been president of both companies for a long time. Following the receipt of the notice of infringement of the patent in suit by the Pacific Manifolding Book Company, conferences were held between officials of plaintiff and officials of the Pacific Manifolding Book Company and American Sales Book Company, Limited. The testimony is convincing that the American Sales Book Company, Limited, had notice of infringement of the patent in suit.

No laches have been established by the defendant. Any delay in bringing this action has been occasioned by negotiations between the parties to this litigation.

The patent is valid, and claims 4, 5, 6, 29, 30, 31, 32, 33, 47, 48, 53, and 54 are infringed. The plaintiff's brief sets forth with particularity the manner in which the defendant's devices infringe. These particulars may be incorporated in the proposed findings.

Decree for plaintiff.

Settle findings of fact and conclusions of law and decree upon notice.