**STURGIS REGISTER CO. et al. v. AUTOGRAPHIC REGISTER CO.**

**AUTOGRAPHIC REGISTER CO. v. STURGIS REGISTER CO. et al.**

Nos. 6532, 6533.

Circuit Court of Appeals, Sixth Circuit.

Dec. 12, 1934.

Otis A. Earl, of Kalamazoo, Mich. (Chappell & Earl, of Kalamazoo, Mich., on the brief), for Sturgis Register Co. and National Carbon Coated Paper Co.

William R. Wood, of Cincinnati, Ohio (Cooper, Kerr & Dunham, of New York City, Edmund P. Wood, of Cincinnati, Ohio, and Liverance & Van Antwerp, of Grand Rapids, Mich., on the brief), for Autographic Register Co.

Before MOORMAN, SIMONS, and ALLEN, Circuit Judges.

MOORMAN, Circuit Judge.

The Autographic Register Company, owner of the Shoup & Oliver patent 1,396,070 for an autographic register, brought this suit against the Sturgis Register Company and the National Carbon Coated Paper Company for infringement of the patent. The bill charged direct infringement of claims 4, 5, 6, 29, 30, 31, 32, 33, 47, 48, and 53, and contributory infringement of claims 54 and 55. The defenses were (1) invalidity, (2) noninfringement, either direct or contributory, and (3) the manufacture and sale of the alleged infringing devices under a license from the plaintiff. The court decreed the first group of claims valid and infringed, and dismissed

the bill so far as it asserted contributory infringement. The defendants have appealed from so much of the decree as adjudged the patent valid and infringed, and the plaintiff from that part dismissing the bill as to contributory infringement.

The patent is for a device adapted to regulate the feeding through a pair of rollers of a plurality of superposed strips of paper or fabric, each strip having near each of its margins a series of longitudinal apertures, arranged in transverse alignment. Claim 5, quoted in the margin,* is typical of the claims held infringed. Interpreted in the light of the specifications, it calls for a pair of feed rollers operated by a crank, with a table or plate in front, one of the rollers being an ordinary friction roller, and the other being formed with a pair of annuli or disks, each arranged in alignment with one of the series of apertures in the paper. The function of the disks is to feed the superposed strips in exact relation to each other between the two rollers. This is done by frictional traction on the strips between the apertures in coaction with the companion roller. When the strips have been moved to a point where the disks enter the apertures in some of them, the friction becomes inactive to advance such strips, but is still active to advance the others until all are brought into alignment. Having reached this stage, the disks are ineffective to advance the strips further until after they are started. The starting is done by a manually operated trip, after which, by the turning of a crank, the feed roller and disks will advance them in accurate alignment until they are again stopped by the entry of the disks into other apertures. Thus it is that means are provided for automatic alignment or for correcting misalignment in feeding the strips or sheets through the rollers. The device is in common use in retail stores. For convenience in such use it is the general practice to interpose carbon paper between the strips and subdivide them into predetermined length by tearing lines, so that shorter strips on which entries are made may be torn off in the form of tickets, one of them furnished to the purchaser and the others used in recording the sale.

It was common practice before Shoup & Oliver to feed multiple strips of paper or fabric with interposed carbon paper between rollers, but there was inutility in such devices for commercial uses in that there was a constant relative movement between the superposed strips so that they quickly got out of alignment, with the result that entries made on the original strip in relation to the printed matter thereon would appear on the copies in a different relation to like printed matter thereon. This was the problem which Shoup & Oliver solved by devising a register that would feed the sheets in uniform alignment, and enable the operator to make an entry on the original and duplicates in the same relation to the printing thereon. This was a new and useful result in the art of autographic registers. That it was not taught by prior art autographic registers seems plain. Of the references relied on as anticipations, Casler, No. 776,723, is perhaps the closest. That patent has no commercial history. It related to a mechanism for the feeding of a photographic film in a moving picture apparatus, and contemplated the feeding of a single film across the lens with intermittent stops and starts at such brief intervals as to present the illusion of continuity of motion in the projected image. The film was formed with a marginal series of minute holes, with intermediate unperforated portions of like minuteness. The feed rolls were provided with a series of raised segments to engage the portions of the film between the apertures or holes for a fraction of a second, and then pass into the apertures for a like instant in point of time, and thus produce alternate periods of brief stoppage and motion necessary to the taking of moving pictures. There was no conception in Casler of a mechanism adaptable to an autographic register which would feed superposed strips of paper in alignment. He dealt only with a single strip or film, not with anything analogous to multiple strips where it is necessary to effect and maintain uniform registry and alignment. It cannot be said, therefore, that Casler suggested Shoup & Oliver. Finding nothing pertinent in any of the other references relied upon by the defendants, and being of opinion that the Shoup & Oliver register is a new and useful device, we conclude that it is entitled to invention.

The defendants' registers which are alleged to infringe are exemplified by Exhibits 5 and 6. Both of these registers have feed rollers, one of which is formed with projec-

* "5. In a device adapted to regulate the feeding of a plurality of superposed strips of fabric through the medium of a series of apertures arranged longitudinally of each thereof, means for advancing said strips comprising means which, upon successively engaging said apertures, render said advancing means intermittently inoperative to continue said advancement."

tions equivalent to the disks or annuli of Shoup & Oliver, such projections frictionally engaging the strips to advance them but being narrow enough to enter the holes in the strips and become inactive for further feeding except as to such strips as have not been brought into alignment, which, after being aligned, will cease to advance. There are differences, it is true, between the mechanism of these devices and that of Shoup & Oliver for starting the strips after they have once been brought to a stop by the entry of the disks or protuberances into the apertures in the paper, but these differences are not material. In concept and fundamental construction the devices are substantially the same as Shoup & Oliver. We think they infringe.

■ The claim of license grows out of an agreement made by the plaintiff with the American Sales Book Company. By this agreement the plaintiff and the American Company granted to each other mutual licenses under the Shoup & Oliver application and a patent application of Hagemann owned by the American Company. The Sturgis Register Company is owned and controlled by its codefendant, the National Carbon Coated Paper Company. It purchases for resale as its own product registers of the type of Exhibit 6 from the American Company. It is contended that the license agreement gives the latter company the right to make and market registers of this type, embodying the plaintiff's invention, as the product of another company. This license was considered by the District Court for the Eastern District of New York in a suit against a customer of the American Company. Autographic Register Co. v. A. I. Namm & Sons, 1 F. Supp. 85. The defendant in that case relied upon the license to avoid infringement in the sale of a register known as "Wiz," a product of the American Company. The court held that the license restricted the American Company to the manufacture and sale of the Shoup & Oliver invention in conjunction with a device embodying the type of register disclosed by Hagemann, and that the Wiz register, not being of that type, was not within the license. The trial court in the present case construed the license agreement as likewise limited, holding that Plaintiff's Exhibit 6, sold as the Sturgis register, was not of the Hagemann type, and therefore an infringement. We think this holding is correct. At the time the license agreement was made, the Shoup & Oliver and the Hagemann applications were pending on claim interferences in the Patent Office. Considering that fact in relation to the objects sought to be attained by the parties, we cannot construe the license agreement as granting to the American Company any right to use the Shoup & Oliver invention except in connection with the Hagemann type of register. Exhibit 6 is not of that type and is therefore not within the license.

■ The claim of contributory infringement is based on the ground that the defendants make and sell apertured strips of paper to customers of plaintiff and its licensees for use in the patented register. The argument is that the apertured strips are an element of a combination called for in claims 54 and 55, being necessary to effect the mode of operation and secure the useful results of the invention. We cannot approve this contention, and we do not think it can prevail against Morgan Envelope Co. v. Albany, etc., Paper Co., 152 U. S. 425, 14 S. Ct. 627, 630, 38 L. Ed. 500, Motion Picture Patents Co. v. Universal Film Mfg. Co., 243 U. S. 502, 37 S. Ct. 416, 61 L. Ed. 871, L. R. A. 1917E, 1187, Ann. Cas. 1918A, 959; Heyer v. Duplicator Mfg. Co., 263 U. S. 100, 44 S. Ct. 31, 68 L. Ed. 189, and Carbice Corp. v. American Patents Dev. Corp., 283 U. S. 27, 51 S. Ct. 334, 75 L. Ed. 819. In the Morgan Envelope Co. Case it was held that the article alleged to constitute contributory infringement was not an element of the combination, even though it was called for in the claims. Here as there the article is one "of manufacture perishable in its nature, * * * which must be renewed periodically, whenever the device is put to use." To hold that the monopoly should be extended to prohibit the lawful user of the device from replacing this article upon which the device operates except through the patentee would be contrary to the spirit and purpose of the patent laws.

The decree is affirmed.