## MICROMATIC HONE CORP. v. MID-WEST ABRASIVE COMPANY.

### No. 6857.

District Court, E. D. Michigan, S. D.
June 10, 1948.

Harness, Dickey & Pierce, of Detroit, Mich., for plaintiff.

Whittemore, Hulbert & Belknap, of Detroit, Mich., for defendant.

PICARD, District Judge.

Action on claimed infringement of a patent, and to enjoin, defendant contending that claim (1) of patent is invalid; that defendant has not infringed; and charging an attempt to create a monopoly.

### The Facts

Plaintiff is the owner of Calvert patent No. 1,908,218 for an "abrasive stone holder" and also owns the Jeschke abrasive stone holder patent No. 1,821,518. Claim (1) of the Calvert patent is the only claim in suit and is as follows:

"A honing element for a grinding tool including, an abrasive element and a metal backing member therefor having upstanding sides which are flanged laterally at their upper ends outwardly from the element."

This honing element is used for finishing internal cylindrical surfaces such as the cylinder bores of internal combustion engines. But it is only part of the equip-

ment. Plaintiff also manufactures and owns patent rights to a honing tool on which these abrasive stone holders are mounted and used. A honing tool costs several hundred dollars and lasts for years, while the life of the stone in the holder is from 8 to 24 hours. The abrasive stone holder covered by the Calvert and Jeschke patents, can be used only on the honing tools controlled by plaintiff and plaintiff is the only company that makes the stone holders or shells in which abrasive stones are mounted. There are several concerns engaged in manufacturing stones and plaintiff has no patent on the abrasive. stone used in the holder. The metal shell in which the abrasive stone is placed and which is covered by the patent, is a thin steel or backing member of channel shape with edges of the sides of the channel flanged outwardly. The abrasive stone is secured in the channel by glue, cement or resin. The ends of the backing member are provided with projections that form hooks by means of which the stone shell unit is secured in a steel shoe which when attached forms part of the honing tool.

Prior to invention of the Jeschke stone holder patent, abrasive stones were secured directly into the channels of the hardened and ground steel shoes of the honing tool by means of lead or babbitt and when the stones wore out or broke they were removed by detaching the shoes from the honing tool head and then melting the babbitt or lead. A new stone mounted in a steel shoe was then inserted. Thus the honing user had to carry an extra supply of hardened and ground steel shoes, returning them for refilling; a source of expense and inconvenience. The Calvert invention is an improvement on the Jeschke patent in that the sides of the stone holders in which the abrasive stone fits are flanged outwardly so that when the stone becomes worn down or broken, the stone holder will not scratch, mar or chip the interior of the bore and is less subject to chatter or vibration. Plaintiff sells its patented back with stone as a unit.

Because of the new invention, the user, when the life of the abrasive stone has been exhausted, merely removes the stone holder with used stone from the honing tool and fits in another unit; but plaintiff encouraged return to it of the removed article for scrapping and some times an allowance was made of perhaps one or two cents on the price of new stone holder and stone units being purchased. Plaintiff made comparatively little profit, if any, on the patented article without the stone as such. Plaintiff admittedly made a profit on the stones it sold as replacements, but a substantial part of its profits came from the sale of the original honing tool which is protected by patents owned by plaintiff and which was the only honing tool adaptable to the Calvert patented article.

Defendant sells abrasive stones. Evidence developed that plaintiff does not manufacture stones but uses stones from other manufacturers in its holder, even those of defendant if specified by purchaser. For the most part, however, defendant does business directly with plaintiff's customers —those who have plaintiff's honing tool and who must necessarily buy the Calvert holder. Many of these customers prefer to use defendant's stones and to supply this demand, defendant accepts their used shells or stone holders, replacing the used stone in the shell with one of its own new stones. If defendant upon removing the used stone finds the shell slightly bent, defendant straightens it out. If the shell is corroded defendant bonderizes it before mounting a new stone. Defendant claims, however, that it never tries to straighten out or repair the flanged sides. The assembled article is sold by defendant back to these customers. Defendant does not and cannot purchase a new shell from plaintiff. It may receive a shell from Manufacturer A to whom plaintiff had sold the original and eventually that shell, refilled, may be sold to Manufacturer B. It makes no shells of its own. When it has replaced the stone the completed article is identically the same as the original holder sold by plaintiff with the exception of the stone and the only repair that defendant does is to straighten out and, or, bonderize the shell.

The evidence further shows that on January 8, 1929, one F. E. Harter received patent No. 1,698,590 for a cylinder hone which, among other things, provided for: "a channelled metallic abrasive stick holder

having an abrasive stick therein and held in the recess of each member and having interlocking and snug fitting engagement with the sides and ends of the associated abrasive stick * * *"

The drawings indicate that the abrasive stone in the Harter patent had notches in each side from end to end so that the inturned flanges of the metal shell could lock the stone in position and thus function properly. The Harter patent expired in 1946. On September 1, 1931, F. J. Jeschke was granted patent No. 1,821,518 on an abrasive stone holder the claims of which included the stone as part of the combination. This was the direct forerunner of the Calvert patent, the difference being merely that the sides of the Jeschke stone holder are straight while those of the Calvert patent are flanged laterally outwardly at their upper ends.

Plaintiff claims that defendant has reconstructed or rebuilt plaintiff's invention by inserting a new stone in the used stone holder.

### Conclusions of Law

It appears to this court that if we were to hold that claim (1) should be interpreted to include the abrasive stone as part of the invention, it would be rather difficult to not conclude that what defendant is doing is a reconstruction job.

Therefore the first issue to be settled is whether claim (1) as so interpreted should be discarded as too broad. To answer this question we must investigate the prior art and here, putting it tersely, we find that an abrasive element as part of a grinding tool having a metal back can be traced to the Harter patent which antedates Calvert and which has expired, and such an element with a metal backing extending beyond the stone and ending in a hook was the invention of Jeschke which also ante-dates Calvert. It is apparent, therefore, that all Calvert did was to improve the Jeschke holder by flanging the channel sides laterally away from the stone. In every other particular the Jeschke and Calvert tools coincide. A Jeschke holder without flanges and a Calvert holder with flanges can be interchanged in the honing tool without changing the tool or its operation.

In Lincoln Engineering Co. v. Stewart-Warner Corp., 303 U.S. 545, 58 S.Ct. 662, 664, 82 L.Ed. 1008, the patentee invented a new coupler but claimed the entire old combination with his improved coupler. The court said: "And the improvement of one part of an old combination gives no right to claim that improvement in combination with other old parts which perform no new function in the combination." Here neither the abrasive stone in the Calvert patent nor the abrasive stone holder performs new functions over the abrasive stone and stone holder of the Jeschke patent.

In Kodel Electric & Manufacturing Co. v. Warren Telechron Clock Co., 6 Cir., 62 F.2d 692, 694, the court said: "If a later invention consist solely of the improvement of one of the devices theretofore forming a part of an old combination, which improvement enables that device to perform its separate function in a more efficient and useful manner, and thereby produces a better result in the operation of the whole or broader combination, but does this without change in mode of operation of that combination, *the patentee of the improvement may have a patent which will cover his improvement; but he may not claim the broader combination, merely substituting his improved device for the means theretofore used to perform the same function although less perfectly, for the concept of this combination of means, regarded as a unit, was not his, and it was not new.*" (Italics ours.)

Plaintiff insists that the dominant element of its invention lies in the abrasive stone and of course it isn't necessary that every particular of an invention be something new. You may combine old elements, many of which are unpatented or unpatentable, but if you desire to claim the entire invention as a novelty, it is essential that the various elements are there for the first time associated in the combination unit. " * * * each performing its separate function and all co-operating in the production of the unitary result." Kodel Electric & Manufacturing Co. v. Warren Telechron Clock Co., supra. In the case at bar the stone with the metal backing was not in this

Calvert combination "for the first time." Such combination was old in the Jeschke patent. To some extent it was in the Harter patent.

On this point also the words of the court in Carbice Corp. v. American Patents Corp., 283 U.S. 27, 51 S.Ct. 334, 335, 75 L.Ed. 819, are pertinent. In holding that the sale of dry ice, to be used in patented containers, was not an infringement since dry ice was not patentable, the court said that to hold otherwise would give the patentee a profit "'* * * not from the invention on which the law gives it a monopoly, but from the unpatented supplies with which it is used,' * * *." Further, "Control over the supply of such unpatented material is beyond the scope of the patentee's monopoly; and this limitation, inherent in the patent grant, is not dependent upon the peculiar function or character of the unpatented material or on the way in which it is used."

It is our conclusion, therefore, that here all that plaintiff can rightly claim is the improvement—not the combination which includes the stone. The improvement lies in the metal back. The dominant element in the completed holder undoubtedly is the stone, but the dominant element of the invention is the flanging of the sides of the holder—the stone was claimed in that combination before. Plaintiff cannot claim it here again as part of this invention. Plaintiff's interpretation of claim (1) is too broad and we hold the same invalid.

## Reconstruction or Repair

It is our conclusion also that if claim number (1) could be interpreted as including the abrasive stone as part of the invention, that what the defendant actually does is a reconstruction, not a repair job. We have held, however, that the stone is not part of the invention, and, therefore, under the many decisions, this is a repair job. Beginning with Wilson v. Simpson, 9 How. 109, 13 L.Ed. 66, it is the recognized rule that unpatented components of a patent combination, which wear out quickly as compared to the life of the combination, may be replaced without infringement, but not if the unpatented element is associated for the first time in a new combination and is a dominant or most important element of the completed combination.

This we believe to be the rule laid down in Morgan Envelope Co. v. Albany Paper Co., 152 U.S. 425, 14 S.Ct. 627, 38 L.Ed. 500, although the court admitted that there were undoubtedly many cases where sale of a single element of a combination intended to be used with other elements of a patented combination might be an infringement.

In the case at bar defendant reconstructs the final article as fully as can be possible, but under the decisions it is a permissible reconstruction since we have held that plaintiff had no right to include the abrasive stone as part of the invention. There is a vast gulf between the replacing of a worn part and the reconstruction of the machine or the patented article. In its endeavor to prove that this is only a repair job under any and all the authorities, defendant has cited many cases. We do not agree with this general conclusion for when we analyze these cases we note that where the court held that there was no infringement, in each instance it was not the dominant part of the invention that was being replaced as in the case at bar, but merely a part that had been used up.

For example, there was held to be no infringement in the following cases:

In Heyer v. Duplicator Co. 263 U.S. 100, 44 S.Ct. 31, 68 L.Ed. 189, defendant sold bands of gelatine to owners of a costly and durable copy machine. These bands came as part of the original machine. The machines were costly and the bands were quickly used up. In Wilson v. Simpson, supra, the user replaced new cutters or knives for those worn out although part of the planing machine when originally patented. In Morgan Envelope Co. v. Albany Paper Co., supra, it was the use of toilet paper rolls attached to a patented dispensing device. In Carbice Corp. v. American Patents Corp., supra, it was the sale of dry ice to be used in plaintiff's patented container. Dry ice was unpatented but was included as an element of the combination. In Bassick v. Hollingshead, 298 U.S. 415, 56 S.Ct. 787, 80 L.Ed 1251, it was the sale of a grease gun, part of a lubricating combination, but the grease gun itself was

an unpatented component of the patented combination. In American Safety Razor Corporation v. Frings Bros. Co., 3 Cir., 62 F.2d 416, it was the sale of unpatented razor blades to be used in the plaintiff's patented safety razor for which plaintiff also made its own blades. The same was true of Gillette Safety Razor Co. v. Standard Safety Razor Co., 2 Cir., 64 F.2d 6. In Sturgis Register Co. v. Autographic Register Co., 6 Cir., 73 F.2d 883, the sale of apertured strips of paper to owners of a patented register. In Landis Machinery Co. v. Chaso Tool Co., 6. Cir., 141 F.2d 800, it was the sale of cutters known as chasers to be used in a patented die head. Chasers were not patented per se but were claimed as an element in the patented combination. In Champion Spark Plug Co. v. Emener, D.C., 15 F.Supp. 816, defendant merely filed away the eroded portion of the center electrode of a spark plug so as to form a new spark gap,—clearly repair. In Hess-Bright Mfg. Co. v. Bearing Co., D.C., 271 F. 350, it was the regrinding of grooves of old bearings and inserting new bearings therein.

What makes this a repair and not a reconstruction job in our opinion, lies in the fact that we have held that the abrasive stone is not part of the invention.

### Work on Metal Back Not Reconstruction

But of course this does not apply to the metal backs, which is what the invention covers, and to which our inquiry is limited by elimination of the stone. Straightening out or bonderizing of the sheet metal strip or back is, in our opinion, clearly a repair job.

■ In Automotive Parts Co. v. Wisconsin Axle Co., 6 Cir., 81 F.2d 125, 127, a decision from our own circuit, the court laid down the rule that: "Thus, if the new parts so dominate the structural substance of the whole as to justify the conclusion that it has been made anew, there is a rebuilding or reconstruction; and conversely, where the original parts, after replacement, are so large a part of the whole structural substance as to preponderate over the new, there has not been a reconstruction but only repair." Plaintiff's

position does not meet this test of reconstruction with claim number (1) eliminated or its interpretation restricted. There are no new parts used in straightening out the metal back or cleaning it.

■ Nor can we agree if, as we understand plaintiff's position, that straightening out those backs so that the stone can be replaced and then putting it in, is itself a reconstruction job. See Landis Machinery Co. v. Chaso Tool Co., supra; Hess-Bright Mfg. Co. v. Bearings Co., supra. Cotton-Tie Company v. Simmons, 106 U.S. 89, 1 S. Ct. 52, 27 L.Ed. 79, the bailing case, is not in point because in that case defendant remade the baled ties and sold them. In C. & R. Research Corporation v. Write, Inc., D.C., 19 F.2d 380, the defendant repaired a patented equalizing bar. This case, however, is the best one cited for plaintiff as there are many distinctions to be found in the others. Davis Electrical Works v. Edison Electric Light Co., 1 Cir., 60 F. 276; Hughes Tool Co. v. Owen, 5 Cir., 123 F.2d 950; Southwestern Tool Co. v. Hughes Tool Co., 10 Cir., 98 F.2d 42, all hold to the contrary. The distinction in the case at bar lies in the fact that practically no work is done on the patented part of the combination at all. A used unpatentable part is replaced and whatever repair is necessary is insignificant compared to the whole.

### Further Issues

■ It is also the contention of defendant that plaintiff comes into court with unclean hands because it promotes a monopoly. There is no evidence to support this claim and particularly none that comes within the purview of the decisions referred to by defendant. Nor is defendant's position well taken that Calvert's improvement does not constitute an invention. We think it meets all of the tests laid down in recent cases. It is novel, useful, not an improvement that was obvious to a skilled mechanic, it is a commercial success, and it bears the mark or flash of creative genius.

In conclusion, therefore, we hold that:

(a) The complaint should be dismissed for the reason that claim (1) of the Calvert patent is invalid as it defines the old combination of Jeschke patent number 1,821,518

while disclosing only an improvement of a single element of an old combination without changing the function of the combination;

(b) That defendant is not infringing because it is supplying a perishable unpatented component only of an old combination; and

(c) Defendant is not infringing because it simply repairs the stone holders by cleaning, bonderizing and/or straightening those that are bent. This is not reconstruction.

A judgment in conformity with this opinion may be submitted for signature.