## MICROMATIC HONE CORPORATION v. MID-WEST ABRASIVE CO.

### No. 10810.

United States Court of Appeals
Sixth Circuit.

Nov. 23, 1949.

Arthur W. Dickey, Detroit, Mich., Arthur W. Dickey, Detroit, Mich., on the brief; Harness, Dickey & Pierce, Detroit, Mich., of counsel, for appellant.

C. B. Zewadski, Detroit, Mich., Clarence B. Zewadski, Detroit, Mich., on the brief; Whittemore, Hulbert & Belknap, Detroit, Mich., of counsel, for appellee.

Before SIMONS, ALLEN and MILLER, Circuit Judges.

MILLER, Circuit Judge.

This action was brought by the appellant, Micromatic Hone Corporation, for alleged infringement by the appellee, Midwest Abrasive Company, of claim 1 of Calvert patent No. 1,908,218 for "Abrasive Stone Holder," issued May 9, 1933. The stone holder is used in conjunction with honing equipment for finishing internal cylindrical surfaces such as the cylinder bores of internal combustion engines. The District Judge dismissed the complaint.

Appellant is the owner of the Calvert patent, claim 1 of which is the only claim in suit, and which reads as follows: "A honing element for a grinding tool including, an abrasive element and a metal backing member therefor having upstanding sides which are flanged laterally at their upper ends outwardly from the element."

Appellant also manufactures and owns patent rights to a honing tool on which these abrasive stone holders are mounted and used. The honing tool is reciprocated and rotated in the cylinder bore with the honing elements in abrading contact with the walls of the cylinder bore for the purpose and with the result of grinding the bore to a finish size and providing a finished and polished surface.

The tool head is provided with honing element receiving shoes, which are long, narrow, channel-shaped steel members provided with outwardly presented channels to receive the honing elements. There are usually six of these receiving shoes in each tool head, which are spaced apart about the circumference of the tool head, and arranged so that they may be moved inwardly and outwardly radially with respect to the center of the tool head. These receiving shoes are permanent parts of the tool and are adapted to receive and hold the honing elements which are covered by the patent in suit.

The abrading stone which forms part of the honing element is a manufactured article composed of small particles of abrasive grit, secured together by a vitreous bond and pressed and molded in heat to the desired shape, which is usually long and rectangular. The stone is secured by an adhesive cement in a thin sheet-metal channel, the sides of which extend only part way up the sides of the stone. The ends of the backing member are provided with projections that form hooks by means of which the stone shell unit is secured in the steel receiving shoe which forms part of the honing tool.

The appellant also owns the Jeschke abrasive stone holder patent No. 1,821,518, in which the metal shell in which the abrasive stone is placed was a thin steel or backing member of channel shape with straight sides. Prior to the patent in suit, great care had to be taken to replace the stones in the honing elements before they became worn down to such an extent that the surface of the cylinder bore being ground would be engaged by the hardened and ground receiving shoe which would result in scoring the wall of the cylinder. Some stones wore faster than others and some parts of a single stone wore faster than other parts of the same stone. The Calvert patent relates to an improved holder of the abrasive stone in that the edges of the sides of the channel-shaped backing member are flanged outwardly, so that when the stone becomes worn or broken the stone holder will not score the interior of the bore, and is less subject to chatter or vibration.

Appellant does not manufacture abrasive stones, but purchases them from various companies and mounts them in its abrasive stone holders. The abrasive stones are not patented to appellant. Appellant's honing tools endure many years in operation, but the abrasive stones wear out in about six hours of continuous use and have to be replaced. Formerly, when the abrasive stone wore out, appellant would purchase back from the customer the abrasive stone holder with the used stone herein for two cents and would then refill the old stone holder with a new stone and again sell it to its customer. Later in view of the low cost of the metal stone holder, appellant adopted the practice of mounting each new abrasive stone in a new stone holder. The used stone holder was scrapped.

Appellee is a manufacturer of solid and coated abrasives, producing abrasive stones for use in honing operations and which can be used in conjunction with appellant's patented honing tool and patented abrasive stone holder. Appellee does not manufacture any abrasive stone holders for honing operations, but claims to manufacture superior abrasive stones. Some manufacturers who own and operate appellant's honing tools prefer to use appellee's stones rather than the stones provided by the appellant. At first, appellee furnished appellant with its stones and appellant would mount these stones in its abrasive stone holders in filling such customer's orders. This practice did not work out satisfactorily, and appellee adopted the policy of selling its stones directly to the owners of the honing tools who could refill appellant's stone holders with appellee's stones. This proved inconvenient to the manufacturers who later insisted that appellee mount its stones in stone holders if it desired the manufacturer to use its stones. Appellant would not sell its metal stone holders to appellee. Accordingly, appellee adopted the practice of having the customer ship to it the stone holder with the used stone therein, which the customer had previously purchased from appellant. Appellee then removed the used stone from the stone holder by placing the assembly in a solution which dissolved the adhesive which held the old stone in the metal holder. Appellee then replaced the used stone with a new stone of its own manufacture and returned the old stone holder with the new stone therein to the customer. If the hooks on either end of the holder, or if the body of the holder, was slightly bent, the appellee straightened the same by means of a hammer or pliers. If the old stone holder showed signs of rust, the appellee treated it with a rust resistant. Appellee's customers knew that they were receiving appellee's stones mounted in holders manufactured and sold by appellant. Appellee charged its customers a price which ranged from a price equal to appellant's price to a price 20% in excess of that.

The infringement charged by appellant in this section is the removing of the old stone from the metal backing member or shell, the reconditioning of the metal backing member, the placing of a new stone of appellee's manufacture in the old metal backing member, and the resale of the unit to the hone user. Appellee contended in the District Court that it was not infringing, because (1) it was merely replacing a perishable element, unpatented per se, in the combination of claim 1; (2) that reconditioning the stone holder was a repair of appellant's patented product and not reconstruction thereof; (3) that claim 1 of the Calvert patent was invalid because it was directed solely to the improvement of an element of an old patented combination and appellant had not limited his claim to the improved element, as required by law; (4) that claim 1 of the Calvert patent was invalid because it did not constitute invention; (5) that it was invalid in view of the prior art; and (6) that appellant came into Court with unclean hands because of its efforts to monopolize the sale of unpatented abrasive stones when used in connection with its patented honing tools and patented stone holders. The judgment as entered did not refer to the last three issues, but merely adjudged and decreed that: (1) Claim 1 of the Calvert patent was invalid because it defined the old combination of the Jeschke patent while disclosing only an improvement of a single element of an old combination without changing the function of the combination; (2) appellee was not infringing because it was supplying a perishable unpatented component only of an old combination; (3) appellee was not infringing because it was repairing rather than reconstructing the metal stone holders.

■ We agree with the ruling of the District Judge that the appellee was not infringing because it was supplying a perishable unpatented component of an old combination. It has long been the established rule that if one of the parts of a patented combination, the part being not patentable per se, is made of soft material and wears out, the other parts of the combination remaining capable of performing their normal and expected functions, the right to replace the worn-out part exists quite as definitely as in the case of breakage. Wil-

son v. Simpson, 9 How. 109, 13 L.Ed. 66; Morgan Envelope Co. v. Albany Perforated Wrapper Paper Co., 152 U.S. 425, 14 S.Ct. 627, 38 L.Ed. 500; Heyer v. Duplicator Mfg. Co., 263 U.S. 100, 44 S.Ct. 31, 68 L.Ed. 189. The rule has been several times applied by this Court. Sturgis Register Co. v. Autographic Register Co., 6 Cir., 73 F.2d 883; Landis Machinery Co. v. Chaso Tool Co., 6 Cir., 141 F.2d 800. The safety razor blade cases from the 2nd and 3rd Circuits furnish other examples. American Safety Razor Co. v. Frings Bros Co., 3 Cir., 62 F.2d 416; Gillette Safety Razor Co. v. Standard Safety Razor Co., 2 Cir., 64 F.2d 6. In the present case, the stone included in the combination was unpatented and perishable and obviously intended to be replaced from time to time at short intervals as the combination was used for the purposes for which it was manufactured. We do not agree with appellant's contention that the rule is not applicable because from the standpoint of material cost the cost of the metal backing member is materially less than the cost of the stone. This does not make the metal backing member the subordinate part of the patented combination. The only advance made by the Calvert patent over the old Jeschke patented combination was in bending the sides of the metal stone holder laterally and outwardly from the stone. No improvement was claimed as to the stone itself. Obviously, the dominant element in the patent was in the improved stone holder, regardless of its low cost of manufacture. It also seems clear to us that while its low cost of manufacture warranted a purchaser in throwing it away after the initial stone was worn down, rather than returning it for a refill when the purchaser did not care to be bothered with such details, nevertheless, the metal stone holder was not expended or destroyed, but, on the contrary, had a continued useful life and was available to the purchaser of it for refilling if he desired to do so rather than to throw it away. The physical facts show this to be true. Under the circumstances, it does not follow that the life of the metal stone holder is the same as the life of the abrasive stone.

We also think that the District Judge was correct in his ruling that the appellee was not infringing because it was repairing rather than reconstructing the metal stone holders. In Wilson v. Simpson, supra, the Supreme Court also held that repairing partial injuries, whether they occur from accident or from wear and tear, is only refitting a machine for use and not reconstruction of a new machine. As stated in that opinion—"It is the use of the whole of that which a purchaser buys, when the patentee sells to him a machine; and when he repairs the damages which may be done to it, it is no more than the exercise of that right of care which every one may use to give duration to that which he owns, or has a right to use as a whole." See Automotive Parts Co. v. Wisconsin Axle Co., 6 Cir., 81 F.2d 125; Timken-Detroit Axle Co. v. Automotive Parts Co., 6 Cir., 93 F.2d 76. The District Judge found the facts on this issue of the case as follows [78 F.Supp. 641, 642]: "If defendant upon removing the used stone finds the shell slightly bent, defendant straightens it out. If the shell is corroded defendant bonderizes it before mounting a new stone. Defendant claims, however, that it never tries to straighten out or repair the flanged sides. * * * It makes no shells of its own. When it has replaced the stone the completed article is identically the same as the original holder sold by plaintiff with the exception of the stone and the only repair that defendant does is to straighten out and, or, bonderize the shell."

Each question of repair or reconstruction must be decided upon its own facts. Keeping in mind that the abrasive stone is not patented, that the dominant element of the invention resides in the flanging of the sides of the stone holder, that appellee does not attempt to straighten out or repair the flanged sides, and that the work done on such shells as are found suitable for refilling is of a minor nature done with pliers and a carpenter's hammer, the case falls into the class of repair work rather than reconstruction. Goodyear Shoe Machinery Co. v. Jackson, 1 Cir., 112 F. 146, 55 L.R.A. 692; Champion Spark Plug v. Emener, D.C.E.D.Mich., 16 F.Supp. 816; Hess-

938

Bright Mfg. Co. v. Bearings Co., D.C.Pa., 271 F. 350. In the Hughes Tool Co. cases, relied upon by appellant, the work done on the deep-well drills involved in those cases was different in character and considerably different in degree from the work involved in the present case. In those cases the teeth in the drill were worn down, for practical purposes, to a uselessness for the purposes originally made. The work complained of was *adding* metal to the cutters for new teeth which were then rebuilt from the added material. Southwestern Tool Co. v. Hughes Tool Co., 10 Cir., 98 F.2d 42; Hughes Tool Co. v. Owen, 5 Cir., 123 F.2d 950; Hughes Tool Co. v. United Machine Co., D.C.N.D.Tex., 35 F.Supp. 879.

Appellant relies upon Cotton-Tie Co. v. Simmons, 106 U.S. 89, 1 S.Ct. 52, 27 L.Ed. 79, which involved a reconstruction of severed metallic cotton bale ties. The distinction between that case and one like the present is pointed out in Morgan Envelope Co. v. Albany Paper Co., supra, 152 U.S. at pages 433-435, 14 S.Ct. 627, 38 L.Ed. 500, in Goodyear Shoe Machinery Co. v. Jackson, supra, 112 F.2d at page 150, and in Champion Spark Plug Co. v. Emener, supra, 16 F.Supp. at page 821. The Goodyear Shoe Machinery Co. case, 112 F.2d at pages 150–151, also discusses and distinguishes Davis Electrical Works v. Edison Electric Light Co., 1 Cir., 60 F. 276, which is relied upon by appellant.

■ The District Court's holding that claim 1 of the Calvert patent was invalid was based upon the ruling of the Supreme Court in Lincoln Engineering Co. v. Stewart-Warner Corp., 303 U.S. 545, 58 S.Ct. 662, 82 L.Ed. 1008, and the ruling of this Court in Kodel Electric & Mfg. Co. v. Warren Telechron Clock Co., 6 Cir., 62 F.2d 692. Appellant claims that the facts in the present case make those rulings inapplicable, and that the case falls within the scope of our ruling in Williams Mfg. Co. v. United Shoe Machinery Corp., 6 Cir., 121 F.2d 273. The invalidity of claim 1 of the Calvert patent because of lack of invention or in view of the prior art is not before us on this review. The final judgment in the District Court contained no adjudication upon those issues, although the District Judge discussed them in his opinion. Commissioner v. Estate of Bedford, 325 U.S. 283, 65 S.Ct. 1157, 89 L.Ed. 1611; St. Louis Amusement Co. v. Paramount Film Distributing Corp., 8 Cir., 156 F.2d 400; United States v. San Geronimo Development Co., 1 Cir., 154 F.2d 78. For that reason, and in view of our ruling that the acts of the appellee do not constitute infringement, we make no ruling on the validity of the patent in suit. Landis Machinery Co. v. Chaso Tool Co., supra, 141 F.2d at page 805. Nor is it necessary to rule upon appellee's further defense that appellant has come into court with unclean hands.

The judgment of the District Court is so modified and affirmed.