**MIDLAND SPECIAL SCHOOL DIST. OF SEBASTIAN COUNTY, ARK., v. CENTRAL TRUST CO. OF ILLINOIS et al.***

(Circuit Court of Appeals, Eighth Circuit.
August 8, 1924.)

No. 6515.

**1. Schools and school districts ☞97(2)—Act held to authorize issuance of bonds as means of refunding former issue; "renew."**

Under Sp. Acts Ark. 1911, No. 366, authorizing school district to incur indebtedness and

*Rehearing denied November 10, 1924.

"renew the same from time to time," bond issue to raise funds with which to pay bonds, previously issued under the act is not invalid, "renew" meaning a renewal of the indebtedness by substituting a new indebtedness as was usual in such character of business.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Renew.]

**2. Municipal corporations ☞943(5)—Recital in school bonds held not notice of unauthorized purpose; "equipment."**

Under Sp. Acts Ark. 1911, No. 366, authorizing particular school district to borrow money for erection, alteration, or improvement of school buildings, recital in bonds that money was to be used to equip school buildings, did not constitute notice to purchasers that proceeds were to be used for unauthorized purposes; "equipment" not being restricted to articles or furnishings of a portable nature.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Equipment.]

Appeal from the District Court of the United States for the Western District of Arkansas; Frank A. Youmans, Judge.

Suit by the Central Trust Company of Illinois and others against Midland Special School District of Sebastian County, Ark. Judgment for plaintiffs, and defendant appeals. Affirmed.

George W. Dodd and A. M. Dobbs, both of Ft. Smith, Ark., for appellant.

G. W. Hendricks and J. H. Carmichael, both of Little Rock, Ark., for appellees.

Before KENYON, Circuit Judge, and AMIDON and SCOTT, District Judges.

SCOTT, District Judge. This is a suit in equity by Central Trust Company of Illinois, against Midland special school district of Sebastian county, Ark., to recover upon, and foreclose, a mortgage securing a $14,000 issue of bonds. The Midland special school district of Sebastian county, Ark., is a rural special school district organized by the county court of said county by virtue of General Act No. 321, approved May 31, 1909, as amended by General Act No. 169, approved April 7, 1911, of the Legislature of Arkansas. A number of other classes of school districts exist in Arkansas which find their origin in different acts of the Legislature of that state, among which are special school districts in cities and towns created by a general act of the Legislature approved February 4, 1869 (Acts 1869, No. 13) and amended by General Act No. 248, approved May 6, 1905, and by Act No. 25, approved February 7, 1913.

General Act No. 321 as amended, being the act under which defendant was organized, by its terms conferred upon the defendant power to borrow money for specific pur-

poses upon condition that a majority of the electors vote in favor of the proposition at any general election held on a certain date, and in conformity with certain other conditions. In 1911, it being necessary for the defendant district to borrow money to build and improve school buildings, the Legislature of Arkansas passed a special act referred to in the record and briefs as Act No. 366, entitled, "An act authorizing Midland special school [district] of Sebastian county to borrow money." This act is set out in full later in the opinion.

Under said Act No. 366, defendant district issued a series of bonds aggregating $15,000. In 1916, these bonds were approaching maturity, and it became necessary for defendant district to renew the indebtedness in some manner, either by extension of the time of payment of the existing bonds, or by refunding the indebtedness; that is, issuing a new series of bonds and selling them upon the market to obtain money to pay off the old. In this instance the holders of the old bonds were not willing to extend, and foreclosure was threatened. The board therefore determined to issue and sell new bonds in the sum of $14,000. The board of directors and their advisers seem to have become confused with respect to the legislative acts relative to the formation of school districts, and mistaken as to the particular act under which defendant was organized. In the resolution of necessity touching the issue of these bonds, passed August 11, 1916, it is recited. "Whereas, said district acting through its directors and under the authority of the acts of the General Assembly of Arkansas approved May 6, 1905, and amendments thereto, has determined to issue bonds, etc." Thus it appears that the board of directors thought the district was organized and that they were acting under the authority of the Act of February 4, 1869, as amended by General Act No. 248, approved May 6, 1905. Districts organized under the last named act were authorized to borrow money upon resolution of the board of directors and issue bonds therefor for the purposes of equipping and erecting necessary school buildings, and to refund such indebtedness. Therefore in preparing the form of the bonds in suit the directors used language conformable to General Act No. 248, rather than conformable to Special Act No. 366, under which they were in fact acting. This no doubt accounts for the following recital in the bond: "This bond is one of a series of bonds of a like tenor and effect issued by said school district for the purpose of providing funds with which to equip necessary school buildings in and for said school district and to refund the outstanding indebtedness of said school district, created for erecting and equipping necessary school buildings, in accordance and in strict compliance with the requirements of the laws of Arkansas, and pursuant to resolutions duly passed and adopted by the board of school directors of said special school district. The payment of this bond is further secured by a mortgage deed of trust to Central Trust Company of Illinois, of Chicago, Ill., as trustee, therein and thereby conveying certain real property of said special school district as security for the payment of the principal and interest of said bonds."

Upon the issuance of the bonds they were placed in the hands of brokers for sale. The bonds were sold, but the brokers absconded with the money, and the school district not having received the proceeds of the bonds is now disclaiming its authority to issue the bonds in question, claiming that the bonds are void, and that the purchasers from the brokers or upon the open market are not bona fide holders for value because charged with notice through the recital above quoted of the district's want of authority to issue them. Defendant's contentions are categorically and concisely stated in its brief as follows.

"First. Special Act 366 does not authorize the district to issue bonds and sell them on the open market for the purpose of borrowing money to equip a school building.

"Second. Special act does not authorize the district to issue bonds and sell them on the open market for the purpose of raising money to pay off bonds issued formerly under that act.

"Third. That the bonds in suit show on their face that they were issued for these two illegal purposes and not in conformity with the Special Act 366, and therefore the question of rights of bona fide holders does not enter into the case."

It will therefore be seen that the controlling matter on this appeal is the interpretation to be given Special Act No. 366. If that act correctly construed would authorize the issuance of bonds to procure funds to equip school buildings or to refund legal bonds formerly issued for the erection and equipment of school buildings, then there is no obstacle in the way of purchasers becoming bona fide holders of such second issue of bonds.

Special Act No. 366, authorizes "the Midland special school district * * * acting by and through its board of directors * * * to * * * hold * * * lands necessary for the use of said district; to erect all necessary buildings; to mortgage any and all real estate belonging to same, in order to borrow money for the erection, alteration or improvement of such buildings, and under such conditions and regulations as the board of directors shall prescribe; and to make, execute, and deliver any mortgage, deed of trust, bond or other evidences of indebtedness or security, and renew the same from time to time.

"Sec. 2. Said evidence of indebtedness, whether bonds, notes or warrants, shall have the same validity as they would have if there were money in the county treasury to pay the same at the time they were drawn or executed, and may be made payable in the future and need not be registered * * * until the time for payment. And said school district shall be allowed in law or equity no defense, merely by reason of the fact that it was a school district, but nothing in this act shall be so construed as to prevent or cut off from said district, any right in law or equity which a natural person might claim or assert under like circumstances."

The trial court held that the construction of Special Act No. 366 contended for by defendant's counsel was too narrow, and interpreted the expression of the act "to renew" to include the right to renew the indebtedness in the usual method of transacting business of such character, and that "a renewal of the indebtedness by substituting a new indebtedness for the old was clearly the kind of renewal contemplated by the act."

[1] We think a careful examination of the special act in question and a consideration of its purpose justifies the conclusion of the trial court. The school district had authority to issue bonds or other evidence of indebtedness, including notes or warrants, and to secure the same by mortgage or trust deed. Bonds and warrants issued by school districts are frequently issued in small denominations in large numbers, and it is in accord with experience that they become distributed into the hands of many holders. The narrow construction contended for by the defendant would seriously cripple such an institution in renewing outstanding indebtedness. It would necessitate school districts negotiating and dickering for an extension with each holder of a bond or warrant, and unless all could be brought into accord, foreclosure proceedings would have to be undergone. It seems to us that the conclusions of the trial court were correct with respect to the interpretation to be given the special act in question.

[2] It is contended with much earnestness and ability by defendant's counsel that the recital in the bonds to the effect that the bonds were issued for the purpose of providing funds with which to equip necessary school buildings renders the bonds void, for that under Special Act No. 366 no authority is given such district to issue bonds for that purpose. There is no contention that the bonds were in fact issued to obtain money to equip school buildings, for it is conceded that the purpose of the issue of bonds was to refund the old bonds and their accrued interest. The contention, in short, is that the language of the special act, "for the erection, alteration or improvement of such buildings," does not include "equipment"; and that inasmuch as the bonds on their face purport to be issued for equipment, and that inasmuch as the district never in fact received the proceeds of the sale of the bonds, therefore the bonds are void. It is contended that the term "equipment" covers furniture, furnishings, and portable property, and not such articles or improvements as when installed become a part of the school building. It is true that some authorities, in defining "equipment," restrict the import of the term to articles of this character. Others, however, give it a broader meaning. Webster, in defining the word "equip" says: "To furnish for service, or against a need or exigency; to fit out; to supply with whatever is necessary to efficient action in any way; to provide with arms or an armament, stores, munitions, rigging and the like;—said especially of ships or of troops." Now if the rigging of a ship is equipment, why not desks, rostrums, ventilating fans and devices, tubular fire escapes, and many other articles used in outfitting a schoolhouse be called equipment? In fact, it is common knowledge that all of these articles are called equipment, and yet when they are once installed they become parts of the building. They are all "lienable articles" when being considered in connection with liens of mechanics and materialmen for the construction of buildings. Dictionaries often fall behind the times. Stereotype definitions grow old While the lexicographers of the past may have enumerated and assembled categories of articles to illustrate a meaning, yet after their having done so, we have no

reason to suppose that the categories were exhausted. In determining what is "equipment" we should have clearly in mind the subject which is being equipped. In this case it was a schoolhouse, and we think a schoolhouse would be in modern times incomplete without many of these things commonly termed "equipment." In our opinion the expression, "the erection, alteration or improvement of such buildings" (school buildings), would fairly include many things which are commonly called "equipment," and that the recital in the bond did not necessarily imply that the district was intending to use the proceeds of the sale of the bonds for purposes unauthorized by law. In view of this it follows that the purchasers were not deprived of the status of bona fide holders merely because of such recital.

For these reasons the decision of the trial court should be, and is, affirmed.