## AUTOMOTIVE PARTS CO. v. WISCONSIN AXLE CO.

### No. 6975.

Circuit Court of Appeals, Sixth Circuit.

Dec. 9, 1935.

Arthur C. Denison, of Cleveland, Ohio (Arthur M. Hood, Wm. P. Hahn, and Harold B. Hood, all of Indianapolis, Ind., on the brief), for appellant.

F. O. Richey, of Cleveland, Ohio (Wm. A. Strauch, of Washington, D. C., on the brief), for appellee.

Before MOORMAN, SIMONS, and ALLEN, Circuit Judges.

MOORMAN, Circuit Judge.

The patents in suit, Nos. 1,571,801 and 1,730,900, are combination patents relating to an automobile axle. The appellee, as owner of the patents, makes and sells, without restriction, the patented structures. Among the parts of each of the structures are beveled gear pairs and a wheel driving shaft, neither of which is patented. The appellant makes and sells gears and driving shafts designed for use in appellee's axles. This is a suit for contributory infringement of the patents resulting from the appellant's selling such parts. The defenses are invalidity and noninfringement. The court below found the patents valid and infringed, enjoined the appellant from making, using, or selling any of the designated parts usable for rebuilding axles, and awarded the appellee nominal damages in the sum of one dollar.

In sustaining the first patent the court followed its decision in Timken-Detroit Axle Co. v. Eaton Axle & Spring Co. (D. C.) 56 F.(2d) 651. The appellant, without conceding the correctness of this ruling but suggesting the contrary, relies for a reversal of the decree in its argument before us upon its pleaded defense of noninfringement. We are of opinion that the decision in the Timken-Detroit Axle Co. Case is right, and since the determination of infringement or noninfringement of the patent there sustained is sufficient for decision of the case here presented, we do not pass upon the validity of the second patent.

Samples of the parts of the combination in controversy were introduced in evidence as Exhibits M, N, and P. The parties agree that these parts may be lawfully sold by appellant for repairs but cannot be sold for building or rebuilding the combination. The controversy between them revolves, therefore, about the question: What are repairs and what is rebuilding? The arguments on these points deal in the main with generalizations, without reference to specific sales or replacements. The appellant contends that it has the right to sell the parts for replacements in axles sold by the appellee, regardless of the condition of the other parts of such axles. It also says that the parts are not the "gist or essence of the invention," and on that hypothesis argues that replacement under any condition is not rebuilding. The appellee says that the evidence shows that the reasonably expected usage of the combination is a hundred thousand miles, and that the sale by the appellant of any of the parts to replace a corresponding broken or worn-out part in the original construction before the axle has undergone such usage is rebuilding.

[1] The invention is for a composite thing, embracing several elements or parts, all of which are necessary to and co-operate in the operation of the patented unit. We cannot subscribe to the view that the test of contributory infringement in the furnishing of parts for a combination invention is whether the parts furnished constitute the gist or essence of the invention; indeed, we cannot see how it may be said that any one element or another marks the advance step or is the essence of such an invention. There are cases, it is true, in which the phrase "essence of the invention" is used; but in our view, when the facts in those cases are considered, it cannot be said that the conclusions reached were the result of a logical selection of one or more elements of the combination as the gist or essence of the invention. Neither can we accept the appellee's theory, for it seems plain to us that if it sells one of its axles and the shaft or gearing breaks by accident or because of defect in the material, the buyer has the right to repair or replace the broken part in order to make the axle operative and perform the functions for which it was designed. Similarly, if one of the parts is made of defective or soft material and wears out, the other parts of the combination being capable of performing their normal and expected functions, the right to replace the worn-out part exists, it seems to

us, quite as definitely as in the case of breakage. These rights the appellee confers upon the purchaser by the unconditional sale of the device, and the purchaser having them may employ such services as he wishes to put them into effect. The correct rule is stated, we think, in Wilson v. Simpson, 9 How. 109, 122, 123, 13 L.Ed. 66, as follows: "In either case, repairing partial injuries, whether they occur from accident or from wear and tear, is only refitting a machine for use. And it is no more than that, though it shall be a replacement of an essential part of a combination. It is the use of the whole of that which a purchaser buys, when the patentee sells to him a machine; and when he repairs the damages which may be done to it, it is no more than the exercise of that right of care which every one may use to give duration to that which he owns, or has a right to use as a whole." See, also, Shickle, Harrison & Howard I. Co. v. St. Louis Car-Coupler Co. (C.C.A.) 77 F. 739, 740.

The rule as stated in these cases does not, of course, include replacement of all parts of a combination which may be concurrently broken or exhausted by wear. To permit such replacement would be to permit reconstruction. The right, in our view, must depend in every case upon the special facts of the case as they show the relation of the two classes of parts—those supplied and those remaining in the original construction—to the patented unit. It is not to be decided upon a reasonably expected effective operation of the combination as a whole, the so-called activity or passivity of the parts, or upon convenience or necessities of method in making the replacements. Thus, if the new parts so dominate the structural substance of the whole as to justify the conclusion that it has been made anew, there is a rebuilding or reconstruction; and conversely, where the original parts, after replacement, are so large a part of the whole structural substance as to preponderate over the new, there has not been a reconstruction but only repair. This view is not inconsistent with Foglesong Mach. Co. v. J. D. Randall Co., 239 F. 893 (C.C.A.6), relied upon by the appellant; or Leeds & Catlin Co. v. Victor Talking Mach. Co., 213 U.S. 301, 29 S.Ct. 495, 53 L.Ed. 805, upon which appellee relies. Its application to the facts in those cases would result, in our opinion, in the conclusions there reached. Every case, as we have said, must be decided on its special facts and circumstances. For example, there might be a structure where the putting in of a certain number of new parts would be "reconstruction," whereas the putting in of a smaller number would be "repair," or even where the putting in of one new part would be reconstruction but the putting in of two or three would not be, depending in each case upon whether, after the replacement, the structure as a whole could reasonably be said to be a new structure or the old one. The difficulties that are sometimes encountered in arriving at a correct conclusion in such cases do not arise from any vagueness or uncertainty in the rule or test to be applied, but from the necessity of determining which of the two classes of parts, those supplied or the remaining original parts, dominates the structure as a whole. We are not called upon to make that determination here, for there is no evidence of specific replacements and nothing to show the condition of the original parts of any axle in which a replacement was made or how many of the parts the appellant ever sold for use in a single axle.

The appellee bought two of the parts from the appellant for the purpose of obtaining evidence of infringement. It was not shown whether those parts were ever used for replacements, or, if so, in what circumstances. The appellant nevertheless alleged in its answer that it had sold and offered for sale, and intended to continue to offer for sale, the parts "as substitutes for corresponding worn and damaged parts in the aforesaid axle." The decree enjoins the appellant from selling any of the parts. We think the injunction is too broad, for plainly the appellant has the right to sell parts to replace broken or worn out corresponding parts in axles where the other original parts are sound, provided the new parts will not so dominate the device as to give it the character of a new structure. The injunction, if enforced, would forbid the exercise of this right. We cannot assume that all of the parts which appellant sold were not rightfully sold for such uses. In view of the averment in the answer, we must assume, however, that some of them were sold for impermissible uses. There were no findings of fact as to specific sales and uses; indeed, as we have stated, there was no evidence offered on which findings on those points could be made. Ordinarily the burden rests upon the plaintiff to show

128

patent infringement, but in circumstances such as are here disclosed, where there is an admission of sales without reservation as to the number sold for a single axle or the condition of the original parts in any such axle, it would seem only fair that the seller should assume the burden of showing that its acts were not infringements. It would be difficult for the appellee to ascertain the facts necessary to the determination of that question. The appellant ought to have records of its sales and customers from which the purpose for which the parts were bought could be ascertained, that is, whether for the purpose of repairs or for reconstruction within the meaning of those terms as we have herein defined them. It should, however, have an opportunity to show that the sales were rightfully made, but pending its attempt to do so, if it wishes to make such an attempt, it should be put under the restraint of a temporary injunction of the scope of the injunction herein complained of.

The order of injunction is vacated, and the cause remanded, with direction to the trial court to rehear the cause and determine whether the appellant's sales are for the purpose of repairs or reconstruction within the meaning of those terms as herein defined. Pending such determination the court will issue a temporary injunction against the appellant of the character hereinbefore indicated; and should the appellant fail to offer evidence on the hearing showing to the court's satisfaction that the parts which it proposes to make and sell in the future will be made or sold for no other purpose than repairs as herein defined, the court will issue an order permanently enjoining the appellant from making or selling them for any purpose.