195 P.2d 1005

BOARD OF COUNTY COM'RS OF BERNALILLO COUNTY v. McCULLOH, Atty. Gen.

No. 5096.

Supreme Court of New Mexico.

June 21, 1948.

M. Ralph Brown, Dist. Atty., and Harry D. Robins, Esq. Asst. Dist. Atty., both of Albuquerque, for relator.

. C. C. McCulloh, Atty. Gen. and Robert V. Wollard, Asst. Atty. Gen., for respondent.

A. T. Hannett and George Hannett, both of Albuquerque, amici curiae.

. BRICE, Chief Justice.

This is an original action of mandamus brought in this court to compel the respondent, Clyde C. McCulloh, Attorney General of the State of New Mexico to approve bonds of the County of Bernalillo issued as authorized by Ch. 148, N.M.Laws of 1947, for the purpose of constructing a county hospital with isolation ward, equipping such hospital and isolation ward, and acquiring the land on which to construct the necessary buildings. An alternative writ was issued upon application of the relator, in which the Attorney General was commanded to forthwith approve the bonds or to show cause why he has not done so. The Attorney General has filed his return, in which he states:

"Respondent admits that the hospital bond election held and conducted by Relator was in full conformity with Chapter 148 of the New Mexico Laws of 1947, Chapter 7, Article 6, Chapter 15, New Mexico Statutes Annotated, 1941 Compilation, and Chapter 20 of the Laws of New Mexico of 1947, and that the results of same were properly canvassed and the results duly published as provided by law.

"Respondent, further answering and responding to said Alternative Writ of Mandamus, admits that it is a ministerial duty of his office to approve as to form all valid bond issues as a prerequisite to the purchase of same by the State of New Mexico.

"That the said Writ of Mandamus shows upon its face that bonds issued under the proceedings had herein are void for the reason that Chapter 148 of the New Mexico Laws of 1947 is unconstitutional insofar as it authorizes a county to issue general obligation bonds for the purpose of equipping a county hospital and isolation wards, and for the purchase of necessary land therefor, as same violates Article 9, Section 10 of the New Mexico Constitution which limits the purpose for which a county may borrow money to that of erecting necessary public buildings.

"Wherefore, it is respectfully submitted that the Alternative Writ of Mandamus should be dissolved for the reason aforesaid."

The treasurer of the State of New Mexico was the highest bidder for this issue of bonds, but he has refused to buy them unless and until they are approved by the Attorney General as required by law before the state may purchase them.

The provisions of Ch. 148, N.M.Laws 1947, which authorize the issuance of county bonds "to construct, purchase, own, maintain and operate hospitals, including isolation wards, and to purchase the necessary lands therefor; * * *." as stated in the title of the act, are as follows:

"Section 1. All counties shall have the power to construct, purchase, own, maintain and operate hospitals, including isolation wards, and to purchase the necessary land therefor.

"Section 2. All such counties may, for the purpose of maintaining and operating such hospitals and isolation wards, levy and collect taxes in the same manner as taxes for other general purposes are levied and collected in such counties.

"Section 3. All such counties shall have the power to issue bonds for the construction or purchase and equipping of such hospitals and isolation wards, and for the purchase of necessary land therefor.

"Section 4. Whenever a petition signed by not less than two hundred (200) qualified electors of any county in this state shall be presented to the board of county commissioners of the particular county, asking that a vote be taken on the question or proposition of constructing or purchasing a hospital and isolation ward and acquiring the land therefor, setting forth in general terms the object of such petition and the amount of bonds asked to be voted for, it shall be the duty of the board of county commissioners of such county to which said petition may be presented, within ten (10) days after the presentation, to call an election to be held within sixty (60) days thereafter in such county, and shall give notice of such election by publication once a week for at least three (3) consecutive weeks in any newspaper published in such county, which notices shall set forth the time and place of holding such election, the hospital and isolation ward proposed to be built or purchased, and the land to be acquired, and which bonds are to be voted for. * * * A bond election as above provided may also be called by the county commissioners, without any petition, after said commissioners have made a resolution calling such an election, which resolution shall set forth the object of the election and the amount of bonds to be issued.

* * *

"Section 9. All such counties are hereby authorized to do all acts and make all regulations which may be necessary or expedient for the promotion of this Act."

There is no question raised as to the constitutionality of Article 46 of Ch. 15, N.M. Sts.1941, as amended by Ch. 20, N.M.Laws 1947. The original law provided in great detail for the issuance of county bonds for the building of a courthouse, jail, and bridges; the conducting of an election for their approval by the qualified electors of the county, the form of the bond, the interest rate, and the term for which such bonds may be issued.

The amendment of 1947 added the words "and hospitals" after the words "courthouses, jails and bridges" in Sec. 15-4601, after which the section now reads:

"The boards of county commissioners in this state are hereby authorized and empowered to issue the bonds of such county, in any sum necessary, not greater that four (4) per cent, inclusive of all other bonded indebtedness, of the assessed value of the taxable property of said county, for the purpose of building courthouses, jails, bridges and hospitals."

Sec. 15-4604 was amended by adding the words "or hospital" in two places, so that the part of that section material here, now reads:

"Whenever a petition signed by not less than two hundred (200) qualified electors of any county in this state shall be presented to the board of county commissioners, asking that a vote be taken on the question or proposition of building a court house, jail, bridge or hospital, setting forth in general terms the object of such petition and the amount of bonds asked to be voted for, it shall be the duty of the board of county commissioners of such county to which said petition may be presented, within ten (10) days after the presentation, to call an election to be held within sixty (60) days thereafter in such county, and shall give notice of such election by publication once a week for at least three (3) consecutive weeks in any newspaper published in such county, which notices shall set forth the time and place of holding such election, the court house, jail, bridge or hospital proposed to be built and which bonds are to be voted for."

The original act is not otherwise amended, except to add some sections applicable only to hospitals. No question is raised as to the right of the county to erect a building to be used as a hospital if it is built and paid for as provided by this act.

All of the proceedings of the Board of County Commissioners of Bernalillo County provided for the issuance of bonds "for the construction of a county hospital with isolation wards, equipping such hospital and isolation ward, acquiring the land therefor" etc.

The ballot by which the question was submitted to the qualified electors was in form as follows:

"Bond Election for Bernalillo County
New Mexico

FOR the issuance of bonds of the County of Bernalillo, in the total sum of $1,000,000.00 for the construction of a County Hospital with Isolation Ward, equipping such Hospital and Isolation Ward, and acquiring the land therefor.

AGAINST the issuance of bonds of the County of Bernalillo in the total sum of $1,000,000.00 for the construction of a County Hospital with Isolation Ward, equipping such Hospital and Isolation Ward, and acquiring the land therefor."

appearing both in English and Spanish.

The vote was 1211 for the issuance of the bonds and 151 against it.

Sec. 10 of Article 9 of the State Constitution reads:

"No county shall borrow money except for the purpose of erecting necessary public buildings or constructing or repairing public roads and bridges, and in such cases only after the proposition to create such debt shall have been submitted to the qualified electors of the county who paid a property tax therein during the preceding year and approved by a majority of those voting thereon. No bonds issued for such purpose shall run for more than fifty years."

■ We are of the opinion that a county hospital building is "a necessary public building," as that phrase is used in Sec. 10 of Art. 9 of this state's Constitution. This was the legislature's construction, and we are satisfied that it is correct. Hutcheson v. Atherton, 44 N.M. 144, 99 P.2d 462.

The bonds have been issued for the purpose of "constructing and equipping a hospital and isolation ward, and for the purchase of necessary land therefor." Is this purpose (or purposes) within the prohibition of Sec. 10 of Art. 9 of the state Constitution, which provides "no county shall borrow money except for the purpose of erecting necessary public buildings * * *."?

The question then is whether the phrase "erecting necessary public buildings" as used in Sec. 10 of Art. 9 of the state Constitution, includes within its purview the "construction of a county hospital with isolation ward, equipping such hospital and isolation ward, and acquiring the land therefor."

■ We stated in State ex rel. Ward v. Romero, 17 N.M. 88, 125 P. 617, 621:

"It is the duty of this court to interpret the various provisions of the Constitution to carry out the spirit of that instrument. We should not permit legal technicalities and subtle niceties to control and thereby destroy what the framers of the Constitution intended.

"Where the spirit and intent of the instrument can be clearly ascertained, effect should be given to it, and the strict letter

should not control if the letter leads to incongruous results clearly not intended."

This is in harmony with the rules for construing constitutions as laid down by the Supreme Court of the United States, and courts of other states.

"The words 'concurrent power' occur in an amendment to a Constitution. In framing such instruments words naturally are employed in a comprehensive sense as expressive of general ideas rather than of finer shades of thought or of narrow distinctions. The simple and dignified diction of a Constitution does not readily lend itself to technical definition. There the terse statement of governmental principles in plain language may be looked for." Commonwealth v. Nickerson, 236 Mass. 281, 128 N.E. 273, 279, 10 A.L.R. 1568.

"A constitution, establishing a frame of government, declaring fundamental principles, and creating a national sovereignty, and intended to endure for ages, and to be adapted to the various crises of human affairs, is not to be interpreted with the strictness of a private contract. The constitution of the United States, by apt words of designation or general description, marks the outlines of the powers granted to the national legislature; but it does not undertake, with the precision and detail of a code of laws, to enumerate the subdivisions of those powers, or to specify all the means by which they may be carried into execution." Juilliard v. Greenman, 110 U.S. 421, 4 S.Ct. 122, 125, 28 L.Ed. 204.

"An act of the General Assembly should not be set aside by implication. A constitution should not receive a technical construction, as if it were an ordinary instrument or statute. It should be interpreted so as to carry out the general principles of the government and not defeat them." Jenkins v. State Board of Elections, 180 N.C. 169, 104 S.E. 346, 349, 14 A.L.R. 1247.

"The interpretation of constitutional principles must not be too literal. We must remember that the machinery of government would not work if it were not allowed a little play in its joints." Bain Peanut Co. v. Pinson, 282 U.S. 499, 51 S.Ct. 228, 75 L.Ed. 482.

█ The word "erection" as used in the Constitution is so used in a comprehensive sense. No specific power was given counties to build courthouses and jails; yet they are absolutely necessary to the functioning of the county as a political subdivision of the state. The power to erect these necessary buildings is futile unless land can be purchased on which to erect them; and a bare building is utterly useless unless equipped for its intended purpose.

In a comprehensive sense, then, the power to erect a necessary public building

includes the implied power to purchase the necessary land on which to erect it, and to equip it so that it can be used for the purpose for which it is built. It is immaterial that there may be other lawful means of securing funds for such a purpose. Public buildings may be built from tax levies, but this does not foreclose resort to the method here used to secure the funds.

The courts which have passed upon the question are unanimous in holding that the power to erect a public building implies the power to purchase the necessary land on which to erect it. Dewitt v. San Francisco, 2 Cal. 289; State ex rel. Post v. Board of Education, 71 W.Va. 52, 76 S.E. 127, Ann.Cas.1914B, 1238; Territory ex rel. Overholser v. Baxter, 16 Okl. 359, 83 P. 709; Shiedley v. Lynch, 95 Mo. 487, 8 S.W. 434; Moon v. Alred, Tex.Civ.App., 277 S.W. 787; Meyers v. Kansas City, 323 Mo. 200, 18 S.W.2d 900; State ex rel. Wahl v. Speer, 284 Mo. 45, 223 S.W. 655; Hudgins v. Mooresville Cons. School Dist., 312 Mo. 1, 278 S.W. 769. No case to the contrary has been cited by counsel and we have found none.

The courts are, with one exception, unanimous in holding that there is implied power to equip public buildings where power is given to erect them. Hudgins v. Mooresville Cons. School Dist., supra; Midland Special School Dist. v. Central

Trust Co., 8 Cir., 1 F.2d 124; Territory ex rel. Overholser v. Baxter, supra; Moon v. Alred, supra; State ex rel. Davis v. Barber, 139 Fla. 706, 190 So. 809; Oklahoma County Excise Board v. Kurn, 189 Okl. 203, 115 P.2d 113; Board of Com'rs v. Malone & Co., 179 N.C. 110, 101 S.E. 552; Hendricks v. School Dist., 44 Wyo. 204, 10 P.2d 970; Jewett v. School Dist., 49 Wyo. 277, 54 P.2d 546.

The one decision which holds that the power to purchase sites and erect suitable buildings for school purposes does not include the implied power to equip such buildings, is Grabe v. Lamro, Etc. Dist., 53 S.D. 579, 221 N.W. 697.

There is a difference of opinion among the courts as to the character of equipment authorized. The Florida, Oklahoma, North Carolina and Wyoming courts affirm the power to equip such buildings, but limit the equipment to that which becomes a part of the building, such as desks in school buildings, which are fastened to the floor. The other cases cited hold that the power to erect a public building includes the implied power to furnish and equip it so that it can be used for the purpose for which it is erected.

The following authorities are cited by counsel as bearing upon the question here considered: State ex rel. Jay v. Marshall, 13 Mont. 136, 32 P. 648; Alexander v. Phillips, 31 Ariz. 503, 254 P. 1056, 52

A.L.R. 244; Judd v. School Dist. 227 Mo. App. 921, 58 S.W.2d 783; State ex rel. Bldg. Comm. v. Smith, 336 Mo. 810, 81 S.W.2d 613.

The Attorney General calls attention to Sec. 11 of Art. 9 of the state Constitution, which reads:

"No school district shall borrow money, except for the purpose of erecting and furnishing school buildings or purchasing school grounds, and in such cases only when the proposition to create the debt shall have been submitted to a vote of such qualified electors of the district as are owners of real estate within such school district, and a majority of those voting on the question shall have voted in favor of creating such debt. No school district shall ever become indebted in an amount exceeding six per centum on the assessed valuation of the taxable property within such school district, as shown by the preceding general assessment."

■ He argues with reason that as the Constitution makers gave specific authority to school districts to buy a site upon which to erect school buildings and to equip them out of the proceeds of bond issues, that it is reasonable to conclude that it was not intended by Sec. 10 of Art. 9 to include the implied powers here claimed by relator. We are not unmindful of the force of this argument; but the cogent reasons stated for holding otherwise far outweigh

it. The fact that a similar provision is more specific, does not necessarily establish an intent on the part of the makers of the Constitution to limit the use of the funds to the erection of a bare building without site or equipment.

If the contention has merit, then the authority granted would not include the power to purchase land upon which to erect the building; for that power is included in Sec. 11 of Art. 9, but is absent from Sec. 10 of Art. 9. They must stand or fall together, if the intent of the Constitution makers is to be measured by these differences. No member of this Court seems to doubt the power to purchase land on which to build the hospital; nor have we found any decision that is opposed.

Nothing said in Tom v. Board of County Com'rs., 43 N.M. 292, 92 P.2d 167, and Board of County Com'rs. v. State, 43 N.M. 409, 94 P.2d 515, is opposed to what we have stated herein.

■ We are of the opinion that the Relator has the implied authority to expend out of the proceeds of the bond issue in question the necessary funds to purchase a proper site on which to erect the hospital, and to purchase and install equipment reasonably necessary to the use of the building as a modern hospital.

It is our conclusion that the bond issue questioned is valid and that Respondent

should approve it, and to that end the writ will be made permanent.

It is so ordered.

LUJAN and COMPTON, JJ., concur.

SADLER and McGHEE, Justices (dissenting).

We need not go beyond previous decisions of our own court to settle the primary question presented for decision by the record on this appeal. Tom v. Board of County Commissioners, 43 N.M. 292, 92 P.2d 167, and Board of County Commissioners v. State, 43 N.M. 409, 94 P.2d 515.

The majority concede that the strongest argument raised against lending approval to the bond issue in question arises on a comparison of sections 10 and 11 of Article 9 of the state constitution. For convenience in contrasting them, we set them out side by side as follows:

Sec. 10. "No county shall borrow money except for the purpose of erecting necessary public buildings * * *."

Sec. 11. "No school district shall borrow money, except for the purpose of erecting and furnishing school buildings or purchasing school grounds."

It thus appears that when the framers of the constitution intended legislative authorization in school districts to borrow money for "furnishing" buildings erected, they made that intent clear by removing it from the field of inference. But as to counties, they made their intent equally clear by omitting the legislative authorization conferred in the case of school districts. We call to mind the cardinal rule of construction that the mention of one thing excludes another (expressio unius est exclusio alterius). Under its application power is withheld from the legislature to authorize payment by counties for equipment and furnishings from the proceeds of bonds issued to erect county buildings. We have applied this rule of construction frequently and in a variety of situations. Territory v. Ortiz, 1 N.M. 5; Thurman v. Grimes, 35 N.M. 498, 1 P.2d 972; In re Atchison, T. & S. F. Ry. Co., 37 N.M. 194, 20 P.2d 918; Atchison, T. & S. F. Ry. Co. v. State Corporation Commission, 43 N.M. 503, 95 P.2d 676.

But we are not confined to decisions dealing with cases by analogy. In Tom v. Board of County Commissioners, supra, and Board of County Commissioners v. State, supra, we were dealing with the very language of the constitution here relied upon as the source of authority for the expenditure involved. To repeat it, Art. 9, § 10, reads: "No county shall borrow money except for the purpose of erecting necessary public buildings." We held the bond issue void where the notice of bond election to provide funds for

"erecting" a courthouse and jail stated the issue was to be used for "erecting, remodeling and repairing" an existing courthouse. Why? Obviously, because the notice informed the electorate that some of the proceeds of the bond issue would be used for the unauthorized purpose of "remodeling and repairing." Speaking through the late Chief Justice Bickley, we said [43 N.M. 292, 92 P.2d 169]:

"The resolution and notice are defective and ambiguous, in that they indicate that the proceeds of the bonds will be used for erecting a court house and jail, an authorized use of the funds; and at the same time that they will be used for remodeling and repairing an existing court house and jail, an unauthorized use."

In other words, "erecting" the courthouse and jail were within constitutional authorization; "remodeling" and "repairing" were not. Expressio unius est exclusio alterius.

Again, in an opinion in another case dealing with the same language of the constitution, handed down at the same term, on the same day, and written by the same member of the court, viz., Board of County Commissioners v. State, supra, we rested the decision squarely on an application of the rule of construction that the mention of one thing excludes another. The case is not unlike the one just discussed and quoted from. Indeed, the opin- ion in the former case cites this one. The bond issue was held void as being outside constitutional authorization. The question was put, as follows [43 N.M. 409, 94 P.2d 516]:

"The sole question presented is whether or not under the provisions of Article IX, Sec. 10, of the Constitution and controlling statutes counties can issue bonds for the purpose of remodeling a court house."

And it was answered thus:

"The expression of the limitation on power to borrow money for the purpose of erecting buildings excludes the power to borrow money to remodel, alter or repair a building already existing, unless these processes amount in fact to erection of a building."

It is interesting to note that the present Chief Justice, author of the prevailing opinion in the case at bar, was a lone dissenter in each of the two cases mentioned.

Can it be said that "remodeling" and "repairing" an existing building is less germane or indigenous to the specific thing authorized, viz., "erecting" a building, than is "equipping" and "furnishing" a newly constructed one? We think not. Indeed, we are impressed that to "remodel" or "repair" an existing building in a way that does not amount to rebuilding and thus "erecting" it anew, more nearly approximates attainment of the latter end than does merely "equipping" and "fur--

nishing" a newly erected building. And, yet, as we have seen, by two separate decisions rendered on the same day, we held proceeds of bonds issued for erecting a building were not expendable to "remodel" and "repair" an existing one.

Through what logic or process of reasoning, then, are we to justify spending bond money for furnishing and equipping a newly erected building? How are we to say "to remodel" is not "to erect" but "to equip" is "to erect"? The prevailing opinion furnishes no satisfactory answer to this pertinent inquiry. It is not enough to say:

"We are not unmindful of the force of this argument; but the cogent reasons stated for holding otherwise far outweigh it. The fact that a similar provision is more specific, does not necessarily establish an intent on the part of the makers of the Constitution to limit the use of the funds to the erection of a bare building without site or equipment."
and to dispose of the two decisions of this court so strongly challenging the correctness of the majority conclusion in these cryptic lines:

"Nothing said in Tom v. Board of County Commissioners, 43 N.M. 292, 92 P.2d 167, and Board of County Commissioners v. State, 43 N.M. 409, 94 P.2d 515, is opposed to what we have stated herein."

"The courts are, with one exception," say the majority, "unanimous in holding that there is implied power to equip public buildings where power is given to erect them." The statement is followed by citation of a somewhat pretentious list of cases—nine in all. However, when classified according to jurisdictions they represent only six states and one federal case from the 8th Circuit, two decisions being included in the citations from each of the two states of Oklahoma and Wyoming to make up the aggregate of nine. The majority concede that the cases cited from Florida, Oklahoma, North Carolina and Wyoming—Oklahoma County Excise Board v. Kurn, 189 Okl. 203, 115 P.2d 113; State ex rel. Davis v. Barber, 139 Fla. 706, 190 So. 809; Board of County Commissioners v. Malone, 179 N.C. 110, 101 S.E. 552, and Jewett v. School District, 49 Wyo. 277, 54 P.2d 546—confine equipment purchasable with money borrowed to such as is of a permanent character and becomes a part of the building when incorporated therein. When we subtract from the cases relied on for support those from the states conceded by the majority as confining "equipment" purchasable to that of a permanent nature and which would classify as fixtures, there remain to them to support their position decisions from only three jurisdictions, represented by the cases of Hudgins v. Mooresville Cons. School District, 312 Mo. 1, 278 S.W. 769,

Moon v. Alred, Tex.Civ.App., 277 S.W. 787, and Midland Special School Dist. v. Central Trust Co., 8 Cir., 1 F.2d 124, 126. And from these three cases we withdraw the last mentioned federal case, believing it more nearly aligns itself along with the jurisdictions mentioned which confine "equipment" to such as becomes a part of the building. In the federal case mentioned, the court said:

"Now if the rigging of a ship is equipment, why not desks, rostrums, ventilating fans and devices, tubular fire escapes, and many other articles used in outfitting a schoolhouse be called equipment? In fact, it is common knowledge that all of these articles are called equipment, and yet when they are once installed they become parts of the building. They are all 'lienable articles' when being considered in connection with liens of mechanics and materialmen for the construction of buildings."

See, also, Grabe v. Lamro Independent Consolidated School District, 53 S.D. 579, 221 N.W. 697, cited approvingly by this court in Tom v. Board of County Commissioners, supra, and Pottawatomie County Excise Board v. Standish Pipe Line Co., 189 Okl. 202, 115 P.2d 119, as additional decisions denying the right here claimed to purchase furnishings at large from funds realized from the sale of the bonds.

So it is that when the state of the decisions on the subject is analyzed it is found the majority have the courts of but two states, Missouri, Hudgins v. School Dist., supra, and Texas, Moon v. Alred, supra, (the last mentioned decision being by an intermediate court of appeals) as against the decisions cited above from the states of Florida, Oklahoma, North Carolina, South Dakota, and Wyoming certainly, and the United States Circuit Court of Appeals for the 8th Circuit, seemingly, denying the right here claimed. Of course, to the cases from these jurisdictions may be added our own two heretofore cited, namely, Tom v. Board of County Commissioners, supra, and Board of County Commissioners v. State, supra, which we contend strongly support our position. The implication, then, arising upon a reading of the prevailing opinion that it has the support of the weight of authority in approving the purchase, from proceeds of the sale of bonds, of equipment of all kinds essential to the operation of a first class hospital, is so thoroughly repudiated by analyzing and weighing the authorities that we shall argue this phase of the case no further.

We are not unmindful that the courts which have passed on the question are unanimous, as stated by the majority, in holding that the power to erect a building implies the power to purchase the necessary land on which to erect it. They employ this fact arguendo to support their claim that the power to erect implies also the power to equip and furnish. But they

must make the argument in the face of this court's holding in Tom v. Board of County Commissioners and in Board of County Commissioners v. State, both cited above, that the power "to erect" does not include the implied power "to remodel" or "to repair", and in the face of the further fact that when the framers of the constitution intended that the purchase of "furnishings" from bond money should be permissible they made that intention clear by so stating. See Const. Art. 9, § 11, where the prohibition against borrowing by school districts excludes borrowing for "erecting" school buildings and for "furnishing" them as well. Then compare the language of this section with that of Const. Art. 9, § 10, relating to county buildings. The difference is obvious and significant.

It requires but a glance at the two companion sections of Const. Art. 9 to see that the effect of the majority opinion is to amend section 10 relating to county buildings to make it read as does section 11 relating to school buildings by supplying the word "furnishing" in the former section where omitted by the framers of the constitution. It would have been an easy matter for them to supply that word themselves if they had intended its presence, or, to have omitted it from section 11 if, as the majority contend as to section 10, the language means the same without it.

In writing the majority opinion for this court in Chase v. Lujan, 48 N.M. 261, 149 P.2d 1003, 1011, the present Chief Justice who is author of the majority opinion herein challenged, said:

"One of the principles of our democracy for which our armed forces fight is the separation of powers. We, too, champion the principle that amendments to constitutions must be left to the people and not supplied by the courts."

We hereby renew our pledge of allegiance to the declaration of principle so forcefully stated by the then Mr. Justice Brice in Chase v. Lujan, supra, and seek its application to the question at issue in the case at bar.

A mere reading of the enabling act is convincing that the legislature authorized counties to purchase not only equipment of a permanent character which installed would become a part of the building but as well all types of furnishings and equipment, surgical and otherwise, used in the operation of a first class hospital. Proof of this is demonstrated by the fact that the levy authorized is merely for "maintaining and operating" such hospitals; not for the purchase of equipment. See L.1947, c. 148, § 2. But for this fact, it might be presumed that the county commissioners in authorizing the purchase of equipment from proceeds of the bond issue, and the people in voting favorably therefor, meant

to include only the kind of equipment that lawfully could be so purchased and installed. Jewett v. School District, supra.

In our opinion, the attorney general should not be compelled to lend blanket approval to the proposed bond issue since the purchase of equipment generally from the proceeds thereof is contemplated. For this reason, the alternative writ of mandamus should be discharged. The majority concluding otherwise, we dissent.