# ATTORNEY GENERAL OF TEXAS

### GREG ABBOTT

August 20, 2003

The Honorable Mike A. Stafford
Harris County Attorney
Appraisal District Section
Post Office Box 920975
Houston, Texas 77292-0975

Opinion No. GA-0091

Re: Valuing repairs made to a residence homestead necessitated by flood, wind, fire, or other damage under sections 11.26 and 23.23 of the Tax Code (RQ-0023-GA)

Dear Mr. Stafford:

On behalf of the Harris County Appraisal District (the "District"), you ask how, under sections 11.26 and 23.23 of the Tax Code, the District should value repairs made to a residence homestead that were necessitated by floods, hurricanes, "fire, earthquake, wind, hail, ground shifts, termites, environmental contamination, or any other similar event."[1]

## I.      Background

You indicate that in June 2001 approximately 40,000 Harris County homes were damaged as a result of Tropical Storm Allison and that many of the same homes were flooded again in 2002. *See* Memorandum Brief, *supra* note 1, at 1. The District is uncertain how it should value the restored homes under section 23.23 of the Tax Code, which limits a residence homestead's appraised value for a tax year, and section 11.26 of the same code, which limits the amount of tax that a school district may impose on homesteads of adults who are sixty-five or over ("seniors"). *See id.* at 2-4.

## II.     Relevant Statutes

Section 11.01 of the Tax Code directs that "[a]ll real and tangible personal property" located in this state is taxable unless other law exempts the property. TEX. TAX CODE ANN. § 11.01(a) (Vernon 2001). Generally, an appraisal district must appraise all taxable property in the district "at its market value as of January 1." *Id.* § 23.01(a); *see also id.* §§ 1.04(7) (defining the term "market value"), 23.0101-.013 (setting forth methods for calculating market value). Your questions concern the valuation of certain improvements made to a residence homestead during the year under sections 23.23 and 11.26. *See* Memorandum Brief, *supra* note 1, at 3.

---

[1]Letter from Honorable Mike Stafford, Harris County Attorney, to Honorable Greg Abbott, Texas Attorney General (Mar. 6, 2003) (on file with the Opinion Committee); Memorandum Brief attached to Request Letter, *supra*, at 3 [hereinafter Memorandum Brief].

Section 23.23(a) limits a residence homestead's appraised value:

> The appraised value of a residence homestead for a tax year may not exceed the lesser of:
>
> (1) the market value of the property; or
>
> (2) the sum of:
>
> (A) 10 percent of the appraised value of the property for the last year in which the property was appraised for taxation times the number of years since the property was last appraised;
>
> (B) the appraised value of the property for the last year in which the property was appraised; and
>
> (C) the market value of all new improvements to the property.

TEX. TAX CODE ANN. § 23.23(a) (Vernon 2001). For the sake of brevity, we refer to the amount defined in subsection (a)(2) as the "capped value." *See* Memorandum Brief, *supra* note 2, at 2-3. Subsection (e) restricts the meaning of the phrase "new improvement":

> In this section, "new improvement" means an improvement to a residence homestead that is made after the appraisal of the property for the preceding year and that increases the market value of the property. The term does not include ordinary maintenance of an existing structure or the grounds or another feature of the property.

TEX. TAX CODE ANN. § 23.23(e) (Vernon 2001).

All or part of a certain homestead's appraised value may be eligible for an exemption from taxation or for a restriction on the permissible tax. *See generally id.* ch. 11 ("Taxable Property and Exemptions"). You mention, in particular, section 11.26, which freezes the amount of ad valorem tax a school district may impose on a senior's residence homestead at the amount the school district imposed in the first tax year in which the individual qualified as a senior. *See id.* § 11.26(a). Thereafter, improvements to the senior's residence homestead, "other than improvements required to comply with governmental requirements or repairs," permit the school district to increase the tax to reflect the improvements' value in the first year the homestead's value is increased on the appraisal roll. *Id.* § 11.26(b). The tax is then frozen at the increased level unless further improvements are made. *See id.*

Neither section 23.23 nor section 11.26 appear to use the term "improvements" consistently with the general definition stated in section 1.04 of the Tax Code: "(A) a building, structure, fixture,

or fence erected on or affixed to land"; or "(B) a transportable structure that is designed to be occupied for residential or business purposes." *Id.* § 1.04(3)(A)-(B). Section 23.23's exclusion of "ordinary maintenance of an existing structure" would be unnecessary if improvements included only new buildings, structures, fixtures, fences, or transportable structures. *See id.* §§ 1.04(3), 23.23(e). Similarly, section 11.26, which excludes "improvements required to comply with governmental regulations or repairs," suggests a definition of the term "improvements" other than section 1.04 provides. *See id.* §§ 1.04(3), 11.26(b). In each case, the specific statutes vary from section 1.04's general definition. *See* TEX. GOV'T CODE ANN. § 311.026 (Vernon 1998) (stating that a specific provision prevails as an exception to a general provision where the two cannot be harmonized).

## III.    Hypothetical Scenarios

You set out four scenarios to which you ask us to apply either section 23.23 or section 11.26. *See* Memorandum Brief, *supra* note 1, at 2-3. For each, you ask us to assume "that the properties were appraised in 2000, 2001, 2002, and 2003." *Id.* at 2. In all four scenarios, you describe a homestead with a market value for 2001 of $100,000, which, because of the ten percent cap set by section 23.23(a)(2), had an appraised value of $70,000 in 2001. *See id.* at 2-3.

> **Scenario One:** The home suffered $15,000 in damage from [T]ropical [S]torm Allison. The damage was not repaired as of January 1, 2002. The appraisal district determined that the [property's] market value . . . was $85,000 for 2002. [Taking the lesser of the homestead's market value and the capped valued ($70,000 + $7,000), in accordance with section 23.23(a),] . . . the 2002 appraised valued would be $77,000, a ten percent increase even though the district had reduced the market value. As of January 1, 2003, the damage was fully repaired[,] and the district estimates that the repairs add $15,000 to the [home's] value . . . . The 2003 market value will be $100,000, back to its pre-flood value. . . . Had there been no damage to the home, [its] appraised value would have been $84,700 for 2003.
>
> **Scenario Two:** [T]he home in this scenario . . . was completely destroyed by the storm in June 2001. Its 2001 market value was $100,000, of which $20,000 was attributable to the land and $80,000 to the improvement. . . . [T]he capped appraised value for 2001 was $70,000. On January 1, 2002, repairs had not been made[, and t]he appraisal district determined the [property's] market value . . . to be $20,000. [Under section 23.23, the homestead's market value is less than the 2002 capped value ($77,000), so the] appraised value for 2002 [is $20,000]. As of January 1, 2003, a completely new home had been built on the property. The appraisal district estimates that the market value of the new improvement is $80,000 and that the [land's] market value . . . is $20,000. The total market value is $100,000 for 2003. . . . Had [the home not been

damaged], the 2003 appraised value would have been $84,700 . . . . [The capped value is the sum of the preceding year's value plus ten percent plus the value of the new improvements: $20,000 + $2,000 + $80,000 = $102,000.]

       **Scenario Three:** Assume that in Scenarios One and Two . . . the property owner also qualified for the over-65 "ceiling" on school taxes [under s]ection 11.26. Each owner's school tax levy was fixed at $500 prior to 2001. For 2002, there would be no change in the maximum levy amount, even though the tax for that year might be lower. Unlike the ten percent homestead cap [under section 23.23(a)(2)], reductions in value do not change a frozen school tax levy. The question again concerns how 2003 will be handled.

       **Scenario Four:** [T]he repairs . . . bring the property to a better than pre-flood state as worn or outdated components are replaced with new, up-to-date components. For example, a flood-damaged kitchen might have new cabinets, counter tops, flooring, and appliances installed [, which may enhance] the value of the property over its pre-flood value. Similarly, if the property owner builds a new structure on an elevated foundation, its value may be significantly greater than that of the pre-flood property. The enhancement in value, however, is incidental to the repair; the homeowner . . . simply intend[s] to restore his home to a functional state. . . . Moreover, if the owner makes significant other enhancements, such as adding an extra bath or increasing the size of the home, should value added by these enhancements be treated differently?

*Id.* at 2-3.

## IV.   First Issue: Whether Post-Flood Rehabilitation is a "New Improvement" for Purposes of Tax Code Section 23.23

The pivotal issue in determining how to value recent reconstructive work on a homestead is to decide whether the work is a "new improvement," which by definition "increases" the property's market value, under section 23.23(e). *See* TEX. TAX CODE ANN. § 23.23(e) (Vernon 2001). "[T]he market value of all new improvements" is one of the three numbers that must be added together to determine a homestead's capped value. *Id.* § 23.23(a).

Section 23.23(e) excludes from the scope of work that is a new improvement "ordinary maintenance." *Compare id.* § 11.26(b) *with id.* § 23.23(e). We find no helpful case law defining the term "ordinary maintenance," but the term "ordinary" by itself signifies "usual or common." *El Paso Elec. v. Real Estate Mart, Inc.*, 650 P.2d 12, 18 (N.M. Ct. App. 1982); *see also* X OXFORD ENGLISH DICTIONARY 912 (2d ed. 1989) (defining the term "ordinary" as "[c]ommonly practi[c]ed or experienced; common, customary, usual" and "not exceptional"). The term "maintenance"

suggests "keeping" a building "in working order, in repair." IX OXFORD ENGLISH DICTIONARY 225 (2d ed. 1989); *see* TEX. GOV'T CODE ANN. § 311.011(a) (Vernon 1998) (directing that words and phrases be construed according to the rules of grammar and common usage). A Louisiana court classified certain repairs as "ordinary": painting; repairing leaks; removing glass mould; replacing one frame of glass; erecting an iron post around an electrical substation; removing a small tree; and repairing the air conditioning system. *See Succession of Crain*, 450 So. 2d 1374, 1376 (La. Ct. App. 1984).

Given its common meaning, the term "ordinary maintenance" does not include substantial repairs and reconstruction necessitated by an extraordinary event like a tropical storm or hurricane. Whether repairs necessitated by other causes, such as termite infestation, constitute ordinary maintenance is a question of fact that the opinion process cannot resolve. *See* Tex. Att'y Gen. Op. No. GA-0003 (2002) at 1 (stating that the opinion process does not determine facts). Rather, the chief appraiser must determine the ordinariness of particular maintenance, subject to appraisal district board and judicial review. *See* TEX. TAX CODE ANN. §§ 6.03(a), 6.05(c) (Vernon 2001) (setting out appraisal board's and appraiser's authority).

For those improvements that increase a property's market value and that are not ordinary maintenance, we are compelled to read section 23.23(a)(2) to require the appraiser to include their value in the calculation of the residence homestead's appraised value. *See id.* § 23.23(a), (e).

You suggest that the term "ordinary maintenance," which is excepted from new improvements that increase a homestead's appraised value, should be defined to mean "repairs," which are excepted from improvements for purposes of section 11.26 of the Tax Code. *See* Memorandum Brief, *supra* note 1, at 4. Even if the terms "maintenance" and "repair" may be synonymous, section 23.23(e)'s use of the adjective "ordinary" greatly limits the scope of the maintenance work that is excepted from new improvements for purposes of section 23.23. Thus, we cannot construe the phrases "ordinary maintenance" and "repairs" synonymously.

Moreover, the legislature has evaluated property loss that occurs due to a natural disaster and has determined that the appropriate remedy is not to adjust the homestead's appraised value in the way you suggest, but to allow a taxing unit to authorize the damaged property's reappraisal immediately following the disaster. Section 23.02 of the Tax Code permits "[t]he governing body of a taxing unit that is located partly or entirely inside an area declared to be a natural disaster area by the governor [to] authorize reappraisal of all property damaged in the disaster at its market value[,] immediately after the disaster." TEX. TAX CODE ANN. § 23.02(a) (Vernon 2001). If a taxing unit authorizes a reappraisal, "the governing body [must] provide for prorating the taxes on the property for the year in which the disaster occurred." *Id.* § 23.02(d). Although the statute does not define the term "natural disaster," it must be a catastrophe officially declared a disaster by the governor. *See id.* § 23.02(a); *see also* TEX. GOV'T CODE ANN. § 418.014 (Vernon 1998) (authorizing the governor to declare a state of disaster if he or she finds that a disaster has occurred or that a threatened disaster is imminent).

A new subsection (f), added to section 23.23 in 2003 by the Seventy-eighth Legislature, does not apply to the homeowners in your hypotheticals, all of whom repaired or reconstructed their

damaged homesteads by January 1, 2003. The new section 23.23(f) excludes from the class of improvements that would otherwise constitute new improvements under subsection (e) "a replacement structure for a structure that was rendered uninhabitable or unusable by a casualty or by mold or water damage." Act of June 1, 2003, 78th Leg., R.S., S.B. 340, § 9 (to be codified at TEX. TAX CODE ANN. § 23.23(f)). This new exclusion applies to property appraisals for tax years beginning on or after January 1, 2004, even if the casualty, mold, or water damage occurred before that date. *See id.* § 12(a), (d).

You also ask, in the fourth scenario, how improvements that increase the pre-flood value of the house, such as new countertops, new appliances, an extra bath, or additional square footage, affect a homestead's valuation under section 23.23 when the improvements are made in the course of repairs from a tropical storm or similar disaster. Upgrades to the residence homestead that increase its market value are not ordinary maintenance and are plainly new improvements for purposes of section 23.23(a). Their value must be included in the capped value calculation.

## V.     Whether Post-Flood Rehabilitation is an "Improvement" for Purposes of Tax Code Section 11.26

You similarly ask whether the restorations described in scenarios one and two trigger a school tax increase under section 11.26(b) of the Tax Code. *See* Memorandum Brief, *supra* note 1, at 3-4. Because "repairs" are not improvements for purposes of section 11.26, we must consider the meaning of the term "repair." *See* TEX. TAX CODE ANN. § 11.26(b) (Vernon 2001).

The term "repair," which is not defined for purposes of section 11.26, must be defined consistently with its "common usage." TEX. GOV'T CODE ANN. § 311.011(a) (Vernon 1998); *see* TEX. TAX CODE ANN. §§ 1.04, 11.26 (Vernon 2001). Case law suggests that repairs are reconstructive work performed after partial, but not total, destruction. "To repair means to restore to a sound or good state, after decay, injury, dilapitation, or partial destruction." *Gulf City St. Ry. & Real Estate Co. v. City of Galveston*, 7 S.W. 520, 521 (Tex. 1888) (citing Webster's Dictionary). Thus, the term "repair" does not encompass rebuilding a structure that was totally destroyed by fire. *See Realty & Rebldg. Co. v. Rea*, 194 P. 1024, 1029 (Cal. 1920) (stating that the term "repair" does not mean "replace": the first means "to mend an old thing," while the second means "to make a new thing"). In a patent case, a Michigan court described the difference between repair and reconstruction: "'[I]f the new parts so dominate the structural substance of the whole as to justify the conclusion that it has been made anew, there is a rebuilding or reconstruction; and conversely, where the original parts, after replacement, are so large a part of the whole structural substance as to preponderate over the new, there has not been a reconstruction but only repair.'" *Micromatic Hone Corp. v. Mid-West Abrasive Co.*, 78 F. Supp. 641, 645 (E.D. Mich. 1948) (quoting *Automotive Parts Co. v. Wis. Axle Co.*, 81 F.2d 125, 127 (6th Cir. 1935)), *aff'd*, 177 F.2d 934, 937 (6th Cir. 1949).

In a particular case, an appraiser must determine in the first instance whether work done on a particular structure constitutes repair. In the two scenarios you have set out, one residence suffered $15,000 in damage, while the other was completely destroyed. In accordance with the definition of the term "repair," the latter cannot be repaired; it must be rebuilt, and the rebuilt structure is an improvement for purposes of section 11.26(b). According to section 11.26's plain language, the tax

may be increased accordingly. *See* TEX. TAX CODE ANN. § 11.26(b) (Vernon 2001). On the other hand, whether the former residence can be repaired or must be reconstructed is a question that requires the weighing of facts, which is not a function of this office. *See* Tex. Att'y Gen. Op. No. GA-0003 (2002) at 1 (stating that the opinion process does not determine facts). Moreover, the statute does not suggest how an appraiser should determine whether a homestead was partially destroyed, and therefore may be repaired, or totally destroyed and may not be repaired. Because the value of the damage totaled less than half of the homestead's original value, an appraiser reasonably could find that the homestead was repaired, although the ultimate determination is for the appraiser. If an appraiser determines that a particular residence has indeed been repaired, section 11.26 of the Tax Code compels the conclusion that the homestead has not been improved, and the tax may not be increased. *See* TEX. TAX CODE ANN. § 11.26(b) (Vernon 2001).

You also ask about those situations in which a homeowner "bring[s] the property to a better than pre-flood state as worn or outdated components are replaced with new, up-to-date components" or makes significant other upgrades, above and beyond replacing old components with new, modern components. Memorandum Brief, *supra* note 1, at 3. In either case, you state that the residence's post-restoration value exceeds its pre-flood value. *See id.*

Ultimately, the decision regarding whether a residence homestead has been repaired or improved for purposes of section 11.26 involves fact determinations that the appraiser must resolve in the first instance. We provide only guidance in this regard.

In the first situation you posit, upgrading fixtures and appliances constitutes repair for purposes of section 11.26 so long as the components of the original structure "preponderate." *See Micromatic Hone Corp.*, 78 F. Supp. at 645 (quoting *Automotive Parts Co.*, 81 F.2d at 127). Section 11.26(c) refers to improvements and repairs "to the . . . residence homestead," not repairs to individual components. TEX. TAX CODE ANN. § 11.26(b) (Vernon 2001). Thus, although a dishwasher, for example, may be damaged beyond repair and require replacement, the residence homestead itself is repaired by installing a new dishwasher.

On the other hand, building a new structure on an elevated foundation is not a repair because the structure is new; you tell us that the original structure was completely destroyed. *See Gulf City St. Ry. & Real Estate Co.*, 7 S.W. at 521 (defining the word "repair" to mean restoration after "partial destruction") (quoting Webster's Dictionary).

Adding an extra bath or increasing the size of the home, which you list as examples of "significant other enhancements" that a senior homestead owner may make in the course of restoring the residence, are not repairs under section 11.26. The term "repair" does not include enhancements to a residence's value. Consequently, a school district may increase the tax proportional to the increase in value. *See* TEX. TAX CODE ANN. § 11.26(b) (Vernon 2001).

## S U M M A R Y

For purposes of section 23.23 of the Tax Code, which caps the market value of a residence homestead's appraised value, the term "new improvement" includes repairs made following a natural disaster because the repairs are not "ordinary maintenance." Enhancements that increase a homestead's market value are new improvements for purposes of section 23.23(a)(2), and their value must be included in the calculation of a homestead's capped appraised value.

For purposes of section 11.26(b) of the Tax Code, which permits a school district to increase the tax on a senior's residence homestead if the homestead has been improved, an appraiser must determine whether a homestead damaged by a natural disaster has been repaired or improved.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

DON R. WILLETT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Kymberly K. Oltrogge
Assistant Attorney General, Opinion Committee